**Jose Santos QUINTANILLA–TICAS, Yolanda Leticia Chavez-Quintanilla, Rina Edith Quintanilla-Chavez, Petitioners,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondents.**

No. 85–7221.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1985.

Decided Feb. 27, 1986.

Michael A. Mullery, San Francisco, Cal., for petitioners.

Ellen Sue Shapiro, Washington, D.C., for respondents.

Before WRIGHT, KENNEDY and BEEZER, Circuit Judges.

KENNEDY, Circuit Judge:

Petitioners Jose Quintanilla-Ticas, his wife Yolanda Chavez-Quintanilla, and their daughter Rina Quintanilla-Chavez, nationals of El Salvador, lived in that country until 1980, when they fled to the United States. In 1982 the Immigration and Naturalization Service (INS) commenced deportation proceedings based on their illegal entry. Petitioners conceded deportability but applied for asylum and withholding of deportation. The Immigration Judge denied their application, and the Board of Immigration Appeals (BIA) affirmed. Petitioners appeal the denial of their application for asylum. We affirm.

Petitioners are eligible for a discretionary grant of asylum if they show a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. §§ 1101(a)(42)(A), 1158(a). Petitioners are entitled to withholding of deportation under 8 U.S.C. § 1253(h) if they show a "clear probability" of persecution. *Immigration & Naturalization Service v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984); *Bolanos-Hernandez v. Immigration & Naturalization Service,* 767 F.2d 1277, 1281 (9th Cir.1985). The well-founded fear standard is "more generous" than the clear probability standard. *Sarvia-Quintanilla v. Immigration & Naturalization Service,* 767 F.2d 1387, 1393 (9th Cir.1985); *Bolanos-Hernandez,* 767 F.2d at 1282. Petitioners contend the BIA erred by applying to their asylum claim the clear probability standard instead of the well-founded fear standard.

Petitioners argue that the BIA impermissibly confused the two standards by failing to evaluate separately the applications for asylum and withholding of deportation. The BIA expressly recognized, however, that the clear probability standard applies to withholding of deportation, and the well-founded fear standard applies

to asylum. Where the BIA correctly acknowledges the two standards, it is not required to assess the entire evidence twice, once under the heading of clear probability and a second time under the heading of well-founded fear. Here, the BIA expressly held that petitioners failed to substantiate their claim under either standard. Such a holding is permissible. *See Chatila v. Immigration & Naturalization Service*, 770 F.2d 786, 789–90 (9th Cir.1985); *Lopez v. Immigration & Naturalization Service*, 775 F.2d 1015, 1016 (9th Cir.1985).

To bolster their argument that the BIA did not apply the correct standard to their asylum claim, petitioners point to the BIA's statement that they failed to substantiate their case "whether their claim is assessed in terms of demonstrating a 'clear probability,' a 'realistic likelihood,' a 'reasonable possibility' or a 'good reason to fear' persecution." Although this language is confusing, it does not warrant reversal where, as here, there is sufficient indication that the BIA recognized the distinction between the two applicable standards. *Chatila*, 770 F.2d at 790; *see Lopez*, 775 F.2d at 1016.

Petitioners also suggest that the Immigration Judge failed to apply the proper standard to their asylum claim. The Immigration Judge, however, correctly acknowledged the two applicable standards. Moreover, because the BIA's analysis was correct, any misapplication of the standard by the Immigration Judge was harmless error. *Chatila*, 770 F.2d at 790.

Petitioners next contend that even if the correct legal standard was applied, the BIA erred in determining that they failed to show a well-founded fear of persecution. We review the BIA's determination under the substantial evidence standard. *Del Valle v. Immigration & Naturalization Service*, 776 F.2d 1407, 1412 (9th Cir.1985); *Bolanos-Hernandez*, 767 F.2d at 1282 n. 9. Although we have not defined the quantum of evidence necessary to establish a well-founded fear of persecution, *see Garcia-Ramos v. Immigration & Naturalization Service*, 775 F.2d 1370, 1373 n. 5 (9th Cir.

1985), we have held that an applicant's testimony may be sufficient where it refers to *"specific* facts that give rise to an inference that the applicant has been or has good reason to fear that he or she will be singled out for persecution," *Cardoza-Fonseca v. Immigration & Naturalization Service*, 767 F.2d 1448, 1453 (9th Cir. 1985) (quoting *Carvajal-Munoz v. Immigration & Naturalization Service*, 743 F.2d 562, 574 (7th Cir.1984)) (emphasis in original).

Before fleeing El Salvador, Quintanilla-Ticas was employed for many years as a musician in a military band, a position that required him to wear a military uniform. Petitioners testified that were they to return to El Salvador, they would face grave danger because of Quintanilla-Ticas' long affiliation with the military. However, the only specific evidence they presented in support of their allegation was their testimony that an unknown person threatened Quintanilla-Ticas that "all the uniformed ones must die." Petitioners conceded that the threat was directed at Quintanilla-Ticas not because he was known to be associated with the military, but simply because he was wearing a military uniform. Quintanilla-Ticas has resigned from the military and would no longer wear his uniform, so that persecution is less likely. *See Chavez v. Immigration & Naturalization Service*, 723 F.2d 1431, 1433 (9th Cir.1984) (affirming denial of motion to reopen asylum claim; noting that upon return to El Salvador petitioner would no longer work as security guard or wear his uniform). There is no indication in the record that petitioners would be subject to persecution simply on the basis of Quintanilla-Ticas' past association with the military. Even if petitioners would face some danger in their home town because of Quintanilla-Ticas' former military status, deportation to El Salvador does not require petitioners to return to the area of the country where they formerly lived. *See Marquez-Medina v. Immigration & Naturalization Service*, 765 F.2d 673, 676 (7th Cir.1985) (rejecting claim of extreme hardship; considering

availability of medical care nationwide, not just in petitioner's home town).

We agree with the BIA that the petitioners did not show a well-founded fear of persecution.

The decision of the BIA is AFFIRMED.