Santos Carlos
MARTINEZ–SANCHEZ, Petitioner,

v.

IMMIGRATION and NATURALIZATION SERVICE, Respondent.

No. 83–7846.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1985.

Submission Vacated Aug. 2, 1985.

Resubmitted July 21, 1986.*

Decided July 21, 1986.

As Amended Sept. 3, 1986.

Rosemary J. Esparza, Chula Vista, Cal., for petitioner.

Michael Lindemann, Washington, D.C., for respondent.

Before NELSON, CANBY and BRUNETTI, Circuit Judges.

CANBY, Circuit Judge:

Santos Carlos Martinez-Sanchez, a native and citizen of El Salvador, seeks review of

* This case is herewith ordered resubmitted for

decision.

a Board of Immigration Appeals (BIA) decision denying his application for political asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a) and 1253(h). He contends that the BIA applied the wrong standard of proof when it evaluated his asylum claim. He also argues that the BIA's credibility determination, which led to denial of his request for withholding of deportation, was not supported by substantial evidence. We grant the petition for review.

## I. BACKGROUND

Martinez-Sanchez is a thirty-year-old married man who fled El Salvador in late 1982 because of a claimed fear of leftist guerrillas in his home country. After spending several months in Mexico, he entered the United States on May 1, 1983, evading inspection at the Mexican border. He was apprehended, and deportation proceedings against him began shortly thereafter.

Petitioner testified that he feared returning to El Salvador because of his membership in and collaboration with a right-wing paramilitary group known as Orden. He revealed that his father, a member of the Salvadoran National Police, was a supervisor of Orden and that his family's ties to the Salvadoran government and Orden had led to threats against his life.

At his deportation proceedings, petitioner conceded deportability and filed timely petitions for asylum and withholding of deportation. These requests were denied, and the BIA affirmed.

## II. STANDARD OF PROOF

To qualify for withholding of deportation under 8 U.S.C. § 1253(h), an alien must demonstrate a "clear probability" that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Stevic*, 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984); *Espinoza-Martinez v. INS*, 754 F.2d 1536, 1539 (9th Cir.1985). "Clear probability" is a relatively high

standard; the evidence must show that it is "more likely than not that the alien would be persecuted in the country to which he was being deported." *Stevic*, 467 U.S. at 425, 104 S.Ct. at 2498.

An alien who is unable to demonstrate a "clear probability" of threat to life or freedom may still be eligible for a discretionary grant of asylum under 8 U.S.C. § 1158(a) if he can show that he is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). That section defines "refugee" as any person outside his country of nationality or habitual residence who is unwilling to return "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." We have held that the well-founded fear standard for asylum is more generous than the clear probability showing required for withholding of deportation. *See, e.g., Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1451 (9th Cir.1985), *cert. granted*, ── U.S. ──, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986); *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1281–83 (9th Cir.1984); *see also Stevic*, 467 U.S. at 430, 104 S.Ct. at 2501 (holding "well-founded fear" standard applicable to asylum cases but declining to define its scope).

This case was decided by the BIA before we clarified the applicable standards in our *Bolanos-Hernandez* decision. It also predated the BIA's decision in *Matter of Acosta*, Interim Dec. No. 2986, slip op. at 25 (BIA March 1, 1985), where the Board reaffirmed its position that "well-founded fear" and "clear probability" are not meaningfully different, *Bolanos-Hernandez* and other authority notwithstanding.

In reviewing pre-*Bolanos-Hernandez* decisions in which there is doubt whether the BIA applied the proper standard of well-founded fear, we have adopted a case-by-case approach in which we examine the "analysis actually applied by the BIA" in evaluating the asylum claim in question. *Vides-Vides v. INS*, 783 F.2d 1463, 1468 (9th Cir.1986); *see also Chatila v. INS*, 770

F.2d 786, 790 (9th Cir.1985); *Cardoza-Fonseca*, 767 F.2d at 1454. Thus, the "utterance of certain magical words by the BIA is not the focus of our inquiry." *Vides-Vides*, 783 F.2d at 1463. Instead, we look for evidence in the record that the BIA recognized that different standards "could be relevant in adjudicating claims of persecution under the two separate statutes," even if the Board refuses to acquiesce in our view that the standards are distinct.[1] *Id.* Applying this approach, we conclude that the BIA failed to apply the appropriate standard to petitioner's asylum claim.

In this case, the BIA made it abundantly clear that it did not differentiate between the standards applicable to asylum and withholding of deportation. It first stated:

> The law is well-settled that an applicant for asylum or withholding of deportation bears the burden of proving that he has a well-founded fear of persecution if returned to his native land.

This formulation lumps the two forms of relief together under the asylum standard. Equating the two standards in this manner would be harmless to the petitioner, for the asylum standard is the more lenient. In its next two sentences elaborating on its joint standard, however, the BIA applied stricter requirements to both types of claims:

> This language refers to more than the alien's subjective state of mind. *See*

*Kashani v. INS*, 547 F.2d 376 (7 Cir. 1977). He must *establish that his life or freedom would be threatened* on account of his race, religion, nationality, membership in a particular social group, or political opinion.

(Emphasis added). This language, if softened by reducing the required showing to one of "clear probability," would state the proper standard for withholding of deportation. It is clearly incorrect as a standard for asylum, which it also purports to be.

The BIA then applied its single standard to petitioner's case and denied him all relief. It next added what seems to be an insurance clause for the standard of proof:

> Our conclusion is the same regardless of whether his claim is assessed in terms of a "clear probability," "good reason," or "realistic likelihood" standard of persecution. *See Rejaie v. INS*, 691 F.2d 139 (3 Cir.1982); *Stevic v. Sava*, 678 F.2d 401 (2 Cir.1982); *Matter of Martinez-Romero*, [18 I & N Dec. 72 (BIA 1981), aff'd, 692 F.2d 595 (9th Cir.1982)].

This statement does nothing to change our conclusion that an improper standard was applied. The BIA's citation of authorities removes any doubt. In the context of this case, the BIA seems to have said that it did not matter which standard was applied because they all amounted to the same thing.[2]

---

**1.** We emphasize that this case-by-case approach to reviewing BIA asylum determinations is only clearly applicable in cases decided administratively before *Bolanos-Hernandez*. We need not today decide the appropriate standard for reviewing later BIA decisions. In *Vides-Vides*, however, we said that in these later cases we may require a more explicit statement from the BIA that, even were it to apply a more generous standard of the sort we require, it would still deny the asylum petition. *See Vides-Vides*, 783 F.2d at 1468 n. 3.

**2.** In *Rejaie*, the Third Circuit held squarely that the clear probability standard is required for both withholding and asylum relief. *See* 691 F.2d at 146. The *Stevic* court also held that the two standards were identical but that the Refugee Act of 1980, Pub.L. 96–212, 94 Stat. 102, made the standard more generous than the old clear probability standard. *See* 678 F.2d at 407–09. The Supreme Court reversed, holding that

the clear probability standard continued to apply to requests for withholding. *INS v. Stevic*, 467 U.S. at 425, 104 S.Ct. at 2498. The Court specifically reserved the question of whether the standards were the same although it assumed for purposes of decision that well-founded fear was more generous. *Id.* Finally, in *Martinez-Romero*, the BIA stated that to qualify for either form of relief, an applicant must demonstrate a clear probability of persecution. *See* 18 I & N Dec. at 78; *see also id.* at 77 n. 5 (noting that the five grounds upon which applications for asylum or withholding relief are based are identical). Although we affirmed the BIA decision, we did so on other grounds. The case was before the BIA on a motion to reopen. Our two-paragraph per curiam noted only that in order to avoid deportation, an alien must show some special circumstances beyond conditions suffered by the general population of the home country. *See Martinez-Romero v. INS*, 692 F.2d 595, 595–96 (9th Cir.1982).

The BIA's treatment of the record facts reflects the same approach.

The BIA decision in this case is, then, in marked contrast to several other BIA determinations that we have upheld recently. In those cases, the BIA opinions either expressly recognized the possibility of a more lenient standard, or the context of the opinions failed to show that the two standards were being improperly equated.

For example, in *Lopez v. INS*, 775 F.2d 1015 (9th Cir.1985), we affirmed the BIA's denial of asylum relief. There, the BIA had stated that its view of the merits of the alien's claim was the same " 'whether we apply the standard of 'clear probability' or a *lesser standard*, such as 'good reason'....' " *Id.* at 1016 (quoting BIA decision) (emphasis added by court). Thus, there was a clear indication from the BIA of a differentiation between the standards applicable to the two forms of relief sought.

Similarly in *Chatila v. INS*, 770 F.2d 786 (9th Cir.1985), we affirmed the denial of relief despite the immigration judge's clear error in reviewing Chatila's asylum application under the "clear probability" standard. We determined that we could affirm because the BIA had rendered the IJ's error harmless when it performed its own analysis and determined that the alien had " 'failed to sustain his burden of establishing à well-founded fear that he will be singled out for persecution....' " *Id.* at 790 (quoting BIA decision). True, we also referred to the fact that the BIA had said that its conclusion was " 'the same whether we apply a standard of "clear probability," "good reason," or "realistic likelihood." ' " *Id.* (quoting BIA decision). But we clearly stated in addition that the BIA had recognized the difference between the "clear probability" and "well-founded fear" standards, and had performed a "more discriminating review" than the IJ. *Id.*

For the same reason, we find the case now before us distinguishable from *Vides-Vides* and our recent decision in *Quintanilla-Ticas v. INS*, 783 F.2d 955 (9th Cir. 1986). It is true that in both of those cases, too, the BIA denial of relief included a statement that the Board's decision would be the same whether the claim is " 'assessed in terms of demonstrating a "clear probability," a "realistic likelihood," a "reasonable possibility" or a "good reason to fear" persecution.' " *Vides-Vides*, 783 F.2d at 1468 (quoting BIA decision); *Quintanilla-Ticas*, 783 F.2d at 957 (quoting BIA decision). Reviews of the entire record, however, indicated that the BIA had recognized the distinction between the two applicable standards. Affirmance was therefore appropriate where substantial evidence supported the BIA's conclusion. *Vides-Vides*, 783 F.2d at 1468 (BIA decision, read as whole, reflects recognition of distinctive standards); *Quintanilla-Ticas*, 783 F.2d at 956 (BIA "expressly recognized" different standards).

Finally, in *Rebollo-Jovel v. INS*, 794 F.2d 441 (9th Cir.1986), this court reviewed our recent cases and held that "we should take the Board at its word when it states that it believes a claim should fail under any standard it might apply, *unless it is clear to us, from their context in each case, that the Board's words mean something else.*" *Id.* at 447 (emphasis added). The Board's decision and the record furnished no clear indication that the Board had applied the wrong standard. *Id.* at 446.

By contrast, the record and the BIA's opinion in this case, which twice misstates the proper standard for asylum, and which relies on authority equating the standards of asylum and withholding of deportation, clearly indicate that the BIA employed the wrong standard for Martinez-Sanchez's asylum claim. We emphasize that the differences between the two standards are far more than semantic; some applicants who are unable to establish a clear probability of threat to life or freedom will nevertheless be able to demonstrate a well-founded fear of persecution. They should be given a chance to do so.

We will not adjudicate the case *de novo*. The BIA must be given the opportunity to evaluate petitioner's asylum claim under the proper legal standard. *Cardoza-Fonseca*, 767 F.2d at 1453–55; *see also*

*Maroufi v. INS*, 772 F.2d 597, 601 (9th Cir.1985) (motion to reopen). We accordingly remand the case to the Board for reconsideration of petitioner's asylum claim in light of the standard of well-founded fear adopted by this court. *See Cardoza-Fonseca*, 767 F.2d at 1452–53.

## III. CREDIBILITY

■ Remaining before us is the BIA determination that petitioner was ineligible for withholding of deportation under 8 U.S.C. § 1253(h). The BIA based its determination in part on the IJ's finding that petitioner was not a credible witness. We must defer to an IJ's credibility determinations that are fairly supported by the record. *Saballo-Cortez v. INS*, 761 F.2d 1259, 1262 (9th Cir.1984). The record here, however, does not support the finding.

■ In his oral opinion, the IJ stated in passing that Martinez-Sanchez's credibility had not been established, but he did not indicate why. The BIA stated that the IJ had determined that petitioner was not a credible witness "on the basis of his demeanor as well as the inconsistencies in the record." The IJ mentioned neither of these factors.

The record indicates nothing about petitioner's demeanor. Moreover, the few inconsistencies we can find in the record are minor indeed. There was some confusion about precisely when Martinez-Sanchez had joined Orden. In addition, petitioner's form I–589 listed two children although he testified that he had four children. Except for these two points, the record appears to us consistent. Such "trivial errors" do not constitute "a valid ground upon which to base a finding that an asylum applicant is not credible." *Damaize-Job v. INS*, 787 F.2d 1332, 1337 (9th Cir.1986). The record furnishes no basis for determining what the BIA's decision would have been absent the credibility determination. Accordingly, we reverse the Board's decision and remand for a determination of petitioner's claim for withholding of deportation without reliance upon the adverse credibility determination.

## IV. CONCLUSION

Because the BIA failed to apply the correct standard of proof when it evaluated petitioner's claim for asylum, and because no substantial evidence supported the BIA's finding that petitioner lacked credibility, we grant the petition for review, reverse the decision of the BIA, and remand the case to the BIA for reconsideration of both of petitioner's claims.

PETITION FOR REVIEW GRANTED; REVERSED AND REMANDED.

BRUNETTI, Circuit Judge, dissenting.

I believe the Board of Immigration Appeals ("BIA") applied the proper standard to the petitioner's asylum claim. In the beginning of its decision the BIA applied the well-founded fear standard to both the asylum and withholding of deportation claims. However, equating the standards in this manner was harmless to the petitioner. The BIA then applied the more stringent "life or freedom would be threatened" standard to both claims under §§ 208(a) and 243(h) of the Act. This was the incorrect standard for the asylum claim.

Thereafter, the BIA in two additional paragraphs on page 3 of its decision applied the well-founded fear of persecution standard to both the asylum and withholding of deportation claims. In its conclusion, the BIA stated:

"On the basis of the record before us, we are not satisfied that the respondent has shown that he will be *persecuted or that he has a well-founded fear of persecution* within the contemplation of §§ 208(a) or 243(h) of the Act. Consequently, the respondent's appeal from the denial of his application for *asylum and withholding of deportation* will be dismissed...." (Emphasis added).

The BIA also used its standard "catch-all" language, and found that whether Martinez-Sanchez' asylum claim was assessed in terms of 'clear probability,' 'good reason,' or 'realistic likelihood' he failed to establish that he will be persecuted or that he had a well-founded fear of persecution.

We have previously held that when the BIA does not explicitly state that the asylum standard is more generous than the withholding of deportation standard, it is not necessarily fatal to the BIA's decision because "our concern is with the analysis actually applied by the BIA." *Vides-Vides v. INS*, 783 F.2d 1463, 1468 (9th Cir.1986). The BIA did not limit its consideration of Martinez-Sanchez' asylum claim to the clear probability standard. It simply concluded that the request for asylum would fail regardless of the standard applied, including the lesser standard that our court requires. As we have recently stated, "it does not follow that, because the Board would prefer to equate 'well-founded fear' with 'clear probability,' it always applies the 'clear probability' standard no matter what else it says." *Rebollo-Jovel v. INS*, 794 F.2d 441, 446 (9th Cir.1986).

We should take the BIA "at its word when it states that it believes a claim should fail under any standard it might apply, unless it is clear to us, from their context in each case, that the Board's words mean something else." *Id.* at 447. I disagree with the majority because, considering the decision as a whole, the BIA has recognized the distinction between the two standards that we have adopted. *See Id.* at 446; *Vides-Vides*, 783 F.2d at 1468. If anything, the BIA applied the more lenient standard of well-founded fear to both the asylum and withholding of deportation claims, and therefore any error was harmless.

If evidence in the record substantially supports the BIA's finding that Martinez-Sanchez' testimony was not credible, then the facts presented are not credible and the BIA did not abuse its discretion in denying him asylum. *See Saballo-Cortez*, 761 F.2d at 1264.

Martinez-Sanchez left El Salvador in 1983. However, on both direct and cross-examination he stated that he left El Salvador because of events that occurred in 1982, including a beating, a letter he received, and "loose sheets of paper" from the Popular Forces of Liberation which were thrown at him and which contained a death threat to him and others. Martinez-Sanchez' asylum application states that he had been mistreated by authorities in his home country because of (1) his political opinion, and (2) because he was a member of a particular social group. He claimed the mistreatment occurred at the hands of the guerrillas who allegedly detained him in 1982 for three hours, interrogated him, and beat him. His asylum application also states that the guerrillas distributed a "hand bill" with his name on it saying "death to ORDEN." In his application Martinez-Sanchez claimed he had been a collaborator with ORDEN, a paramilitary group, from 1973–83. However, on cross-examination he stated he first joined ORDEN in "about 1978." On further cross-examination he indicated that the information on his application was incorrect, and when pressed during cross-examination concerning the date he joined ORDEN, he gave an elusive answer. On a separate page to his application petitioner indicated that he was supposed to report any possible guerrilla activity in "his area" to the government; that ORDEN is a right-wing group; and that the work was voluntary. He testified he was a member of the armed forces and identifies "the order" as the Organization of Order. In his asylum application Martinez-Sanchez stated he had been imprisoned because he was suspected of being a guerrilla, but was released after he proved he belonged to ORDEN.

Martinez-Sanchez also testified that his father was a member of ORDEN, and that his father had been threatened in 1981. He did not identify who threatened his father. His father and family are still living in El Salvador and have not been bothered.

His application states that he is single, but also states that his wife's name is Amparo Romero-Linares, but that she lived apart from him, and that he has two sons. On cross-examination he testified that he has four children. The IJ found that Martinez-Sanchez left his wife and four children with his parents in El Salvador and that they have not been bothered.

Based on his application and testimony, the IJ determined that the persons threat-

ening Martinez-Sanchez were the guerrillas, and that his asylum application states that they were the "authority" mistreating him because of his political opinion and membership in a particular social group. The petitioner never presented any evidence that the guerrillas were the "authority" in his country. The IJ further noted that although Martinez-Sanchez left his home six days after receiving a threat from the guerrillas in 1982, he lived elsewhere in El Salvador until he left for the United States in 1983. On cross-examination Martinez-Sanchez admitted he left El Salvador only to avoid serving in the El Salvadoran military.

Evidence in the record substantially supports both the IJ's finding that Martinez-Sanchez' credibility had not been established, and the BIA's finding that the IJ correctly determined that Martinez-Sanchez was not a credible witness on the basis of his demeanor and inconsistencies in the record. There are substantial discrepancies between his asylum application and his testimony, as discussed above, which would support the IJ's credibility determination. *See Saballo-Cortez*, 761 F.2d at 1264.

I respectfully dissent and would deny the petition for review.