907 F.2d 154
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Salomon AYALA-LOPEZ, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 89-70002.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 15, 1990.
Decided June 26, 1990.
 Before FLETCHER, PREGERSON and NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Petitioner Salomon Ayala-Lopez ("Ayala") left El Salvador in 1983 to escape persecution by leftist guerrillas who had been harassing and intimidating both him and his family. He was apprehended by INS agents in Arizona soon after his arrival in the United States. At the subsequent deportation proceedings, the immigration judge denied his application for asylum and withholding of deportation, as well as a motion to change venue. The Board of Immigration Appeals ("BIA") affirmed in all respects. We reverse the BIA and order that petitioner's application be granted both as to withholding of deportation and political asylum.
 
 Factual and Procedural Background
 
 3
 Petitioner, a 24-year-old Salvadoran national, left his homeland on September 8, 1983 to escape persecution by leftist guerrillas. He entered the United States without inspection near Naco, Arizona one week later. He was apprehended by INS officials the following day and an initial deportation hearing took place in Phoenix on December 20, 1983. At this hearing, Ayala was given 30 days to file an application for asylum and withholding of deportation. Once completed, the application was forwarded to the Bureau of Human Rights and Humanitarian Affairs ("BHRHA") which issued an advisory opinion on February 13, 1984. The hearing was then reconvened in March 1984 before the immigration judge ("IJ"). Petitioner conceded deportability and the IJ directed that he be returned to El Salvador if deportation were ordered.
 
 
 4
 Ayala then testified to the harassment and intimidation to which he was subjected by leftist guerrillas which led to his decision to flee the country. In one such incident, he was approached by a band of guerrillas who cut a cross in his hair when Ayala refused to join them[1] and warned that he had until his hair grew out to join them. They further threatened to harm his father, a Commander of a Salvadoran civil patrol who engages in army recruiting, "because they knew what was going on." According to Ayala, this was not the first threat against the life of his father.
 
 
 5
 On another occasion, Ayala reported that about 30 armed guerrillas approached him in a corn field where he was working and demanded money. When petitioner claimed that he had none, the men beat him about the head and back. The guerrillas then told him that they had seen him twice and if they saw him again "they would be disappearing [him] from the place" because "the third time is the disappearing time."
 
 
 6
 In July 1983, Ayala was stopped at an Army check point when he was traveling with a group of people. Although one member of the group was a guerrilla, no one identified him when questioned by the military official. To have done so, Ayala explained, would have jeopardized both his own safety and the safety of his family. The guerrilla told Ayala, in fact, that he would have been killed if he had said anything. He and his family were so frightened following this incident that, according to Ayala, they did not sleep in their homes for three months.
 
 
 7
 Sometime thereafter, the guerrillas again came to Ayala's home and told his father that if he did not pay with his life, "we'll take your children and we will kill them." Twenty days later, petitioner fled the country.
 
 
 8
 His father has since written and told Ayala that "it is God's will that you have been saved of getting killed by not being here." Apparently, the guerrillas continue to threaten Ayala's father and his family such that Ayala's brothers go into hiding whenever they hear that guerrillas are in the area.
 
 
 9
 After considering the foregoing testimony as well as documentary evidence of a general nature submitted by petitioner, the IJ denied the applications for asylum and withholding of deportation, and granted Ayala 30 days voluntary departure. The BIA affirmed the IJ on appeal. The instant petition followed on January 3, 1989.
 
 DISCUSSION
 
 10
 I. Application for Asylum/Withholding of Deportation
 
 A. Burdens of Proof/Standard of Review
 
 11
 Under Sec. 208(a) of the Immigration and Nationality Act ("Act"), 8 U.S.C. Sec. 1158(a), the Attorney General has discretion to grant an alien political asylum if the former determines that the alien is a refugee within the meaning of the Act. To establish refugee status, an alien must demonstrate a "well founded fear of persecution" on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. Sec. 1101(a)(42)(A). This burden is twofold, containing both a subjective and an objective component. That is, the alien must demonstrate a subjective fear of persecution based on objective evidence proving "either past persecution or good reason to fear future persecution." Vilorio-Lopez v. INS, 852 F.2d 1137, 1140 (9th Cir.1988). Once this burden is met, the Attorney General exercises his discretion in deciding whether to grant asylum. Where, as here, the application for asylum is denied on the ground that the alien has failed to prove a well founded fear of persecution, the court of appeals must first determine whether the decision is supported by substantial evidence. If it is not, we must remand to allow the Attorney General to exercise his discretion as to whether to grant asylum. Bolanos-Hernandez v. INS, 767 F.2d 1277, 1282 n. 9 (9th Cir.1984).
 
 
 12
 Applications for asylum filed by aliens who, like Ayala, are subject to deportation are also treated as requests for withholding of deportation. See 8 C.F.R. Sec. 208.3(b). This remedy is governed by 8 U.S.C. Sec. 1253(h)(1) and provides mandatory rather than discretionary benefits once the petitioner meets the statutory eligibility standards.[2] The alien carries, however, a more onerous burden of proof. Under the applicable "clear probability of persecution" standard, she must show that it is "more likely than not" that she will be persecuted if deported to her native country. Blanco-Lopez v. INS, 858 F.2d 531, 533 (9th Cir.1988) (citing INS v. Stevic, 467 U.S. 407, 424 (1984)). By contrast, under the "well founded fear of persecution" standard, it is sufficient that the alien establish that persecution is a "reasonable possibility." Vides-Vides v. INS, 783 F.2d 1463, 1469 (9th Cir.1986). A denial of withholding of deportation, like a finding that an alien has not shown a well founded fear of persecution, is reviewed under the deferential substantial evidence standard. Sanchez-Trujillo, 801 F.2d at 578-79.
 
 B. Merits
 
 13
 Respondent claims that substantial evidence supports the BIA's conclusion that Ayala does not face either a "clear probability" or "reasonable possibility" of persecution if returned to El Salvador. While the INS does not take issue with Ayala's subjective fear of persecution, it claims that the requisite objective evidence is lacking to bolster this fear. Of particular importance in this regard is petitioner's alleged unwillingness to relocate in an area which would afford greater protection from the guerrillas due to an increased military presence and/or a decreased guerrilla presence; since deportation need not be to the alien's hometown, he needs to present evidence demonstrating a probability (or reasonable possibility) of widespread persecution. See Quintanilla-Ticas v. INS, 783 F.2d 955, 957 (9th Cir.1986).
 
 
 14
 Petitioner does not dispute his obligation to relocate in a section of the country which would constitute a safe haven; he simply denies that any such place currently exists in El Salvador. Newspaper articles offered into evidence indicate the pervasive reach of guerrilla activity which frustrates any effort to locate an area where petitioner could reasonably expect to be shielded from persecution. Accordingly, respondent's casual proclamation of the existence of "safe" territory is untenable. The INS quotes, for example, the IJ's statement that Ayala "could have gone to a place where [government soldiers] would have offered protection." But, as petitioner notes, he was residing in such a place at the time of his departure. The Army maintained a checkpoint nearby and his father, himself a Commander in the army, recruited soldiers in the area. The reality is quite simply that the presence of the Army is not sufficient to negate the threat posed by the guerrillas.
 
 
 15
 Moreover, by living at home, Ayala was better able to hide from the guerrillas since family members and neighbors would alert him to their presence and would not divulge his whereabouts when questioned by the guerrillas. Were he to relocate, he would no longer benefit from this family and community protection and would arguably be rendered far more vulnerable.
 
 
 16
 Respondent also argues that the guerrillas' attempted extortion of Ayala is not a ground for persecution within the meaning of the Act and that petitioner's failure to attempt to seek help from law enforcement personnel was "an adverse factor" in establishing his claim. Even conceding that the INS is correct with respect to the attempted extortion, there are other examples of persecutory action taken by the guerrillas which may not be similarly discounted. For example, when Ayala refused to join them, a band of guerrillas cut a cross in his hair and threatened to harm both him and his father unless he joined up in the future. And subsequently, guerrillas came to his home and threatened petitioner's father that his children would be killed if he did not "pay with his life."
 
 
 17
 Under the circumstances, moreover, one should not criticize petitioner for failing to report these incidents to law enforcement officers. Any such action would clearly have placed petitioner in a situation of great personal peril, and the ability of the police to control the actions of roving bands of armed guerrillas is severely limited at the very least.
 
 
 18
 Finally, respondent cites the fact that Ayala's father and brothers have not moved out of their home area as evidence supportive of the BIA's holding since "the continuation of unmolested family life in the country of persecution is a relevant factor in determining the asylum applicant's claim." Id. (citing Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988)). This characterization of Ayala's family's life is, however, misguided. It is true that no family members have been killed or seriously injured, but Ayala's father reports that he and his sons continue to be threatened and harassed such that Ayala's brothers go into hiding whenever they hear that there are guerrillas in the area. Thus, to accept respondent's argument, the court would be forced to adopt an inaccurately narrow definition of "unmolested."
 
 
 19
 Finally, respondent appears to argue that because petitioner claims to have been persecuted by guerrillas rather than by the government, his application is somehow compromised. This argument is utterly without merit. In Bolanos-Hernandez v. INS, 767 F.2d 1277, 1287-88 (9th Cir.1985), the court expressly held that an alien whose life was threatened by guerrillas after refusing to join them was entitled to the benefits of the deportation provisions of the Act. The fact that some of the cases to which petitioner refers involve persecution by the government is beside the point.
 
 
 20
 It is clear from the foregoing that substantial evidence does not support the BIA's conclusions. The evidence presented by petitioner indicates not only that there is a "reasonable possibility" that he would be persecuted upon his return to El Salvador but also that such persecution is "more likely than not" in light of the pervasive guerrilla presence in that country, his family's ties to the military, and the ongoing harassment and intimidation to which Ayala, his father and his brothers have been subjected.
 
 II. Change of Venue
 
 21
 Petitioner also claims, in the alternative, that the IJ wrongfully denied his motion to change venue at the outset of the deportation proceedings. Ayala requested that the case be moved to Los Angeles since he had already retained local counsel and it would be too inconvenient for him to travel the 385 miles to Phoenix for the hearing. Because it is clear that petitioner's application for asylum and for withholding of deportation was wrongfully denied, it is unnecessary to reach the issue of whether the IJ's refusal to grant the requested change of venue was an abuse of discretion.
 
 Conclusion
 
 22
 For the foregoing reasons, withholding of deportation is granted and petitioner's application for political asylum is remanded to allow the Attorney General to exercise his discretion as to whether to grant political asylum.
 
 
 23
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Ayala testified that he wished to remain neutral in the conflict between the Army and the guerrillas "because I do not wish to have more people dying."
 
 
 [2]
 It states that "[t]he Attorney General shall not deport or return any alien ... to a country if [he] determines that such alien's life or freedom would be threatened in such a country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1253(h)