960 F.2d 152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mohammad Ebrahim SURADI, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 90-70217.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1991.*
Decided Feb. 21, 1992.
 
 Before JAMES R. BROWNING, FERGUSON and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Mohammad Ebrahim Suradi-Khalil, a native and citizen of Jordan, petitions for review of the Board of Immigration Appeals' (BIA's) denial of his applications for asylum and withholding of deportation. We grant his petition, reverse the board's decision, and remand.
 
 
 3
 At his hearing before the Immigration Judge (IJ), Suradi testified that he was born in Jordan to Palestinian parents, who moved to Jerusalem while he remained in Jordan to finish high school. He stated that he served in the Jordanian army in order to obtain a passport, and could not join his family in Israel because of his Jordanian citizenship. He testified that his father had worked for the Palestine Liberation Organization (PLO) since 1955 in Jordan, Lebanon, and Syria, although Suradi did not know the nature of his activities and had had no communication with his family.
 
 
 4
 As the basis for his political asylum claim, Suradi described being arrested and detained three times without cause. The first detention came after his return from a trip to England in 1986 and lasted for a week, during which he was beaten with a "gun machine," accused of being a terrorist, and interrogated about his father's and his own alleged terrorist activities. He was then released without being charged with any crime. The second time, about a month later, the detention lasted for ten days. The police asked about his father again, and if he knew anyone in the PLO, and whether the PLO had sent him to England. Six to eight weeks later, he was arrested a third time, beaten and interrogated again, held for two weeks, and again released without charges.
 
 
 5
 After the last arrest, Suradi remained in Jordan for five months, earning money to leave the country, then came to the U.S. on a six-month tourist visa in late 1986. He testified that he was not aware that he could apply for asylum until his deportation hearing.
 
 
 6
 Because Suradi conceded deportability at his hearing, the government's burden is satisfied, and he must show entitlement to relief from deportation. Arteaga v. INS, 836 F.2d 1227, 1228 (9th Cir.1988). He seeks either asylum, based on a well-founded fear of persecution, or a withholding of deportation, based on a clear probability of persecution. The BIA rejected his claims, and he petitions this court, arguing that the BIA decision constituted an abuse of discretion. In particular, Suradi contends that the BIA erred by denying relief from deportation based on its finding that his testimony lacked credibility. We agree.
 
 
 7
 At the initial deportation hearing, the IJ found that Suradi's testimony "was inconsistent, but perhaps it is because he doesn't understand English well, he doesn't understand the questions, he's confused about time, I don't know. I will give him the benefit of the doubt and assume that his testimony is credible." The BIA, however, declined to accept this assumption. Instead, it found that Suradi's testimony "fails to provide a sufficiently detailed, believable and consistent account of his alleged arrests, detentions, and beatings in Jordan." It questioned Suradi's "overall veracity" based on "the lack of detail and consistency" in his testimony, stating "[w]e note that the respondent did not describe the time or place of his alleged arrests, nor did he relate the nature and severity of the beatings he allegedly suffered or the context in which they arose."
 
 
 8
 To support its reversal, the board pointed to some confusion in Suradi's testimony over the date of his trip to England, his initial response that he had no fear of returning to Jordan, and the fact that he remained in Jordan for five months after the last arrest. In the alternative, the BIA also found that even if the arrests did constitute persecution, Suradi's "superficial, cursory responses" to questioning about the alleged interrogations did not establish their political motivation.
 
 
 9
 The problem with this result is that Suradi's testimony, while admittedly less than clear and poorly transcribed, was not internally inconsistent.[1] As the IJ found, Suradi's brevity and lack of detail could easily stem from his limited comprehension of English, coupled with the INS' failure to provide an interpreter at the hearing. His failure to volunteer additional details during the hearing, where he was answering questions posed by counsel in English rather than telling his story in his own language and in his own way, may reflect more on his attorney's ability to elicit detail rather than on his veracity. Moreover, while the lack of detail may be marginally relevant to whether Suradi has met his burden of establishing persecution, it tells us little about his credibility. It seems doubly unfair to allow the respondent's poor English skills and errors in the transcript to determine both the respondent's "veracity" and the merits of his claim.
 
 
 10
 The IJ herself accepted Suradi's testimony at face value, despite its seeming inconsistencies. In previous cases, the BIA itself has held that an IJ's credibility findings were entitled to "great weight." Matter of Pula, 19 I. & N. Dec. 467 (BIA 1987). This makes sense because only the IJ is able to observe the witness' demeanor, and because often, as here, much of the testimony is lost in transcription.
 
 
 11
 For our part, we have held that negative credibility findings, even at the hearing level, will be scrutinized closely and must be supported by substantial evidence:
 
 
 12
 The IJ must not only articulate the basis for a negative credibility finding, but those reasons must be substantial and must bear a legitimate nexus to the finding. Thus, there must be a rational and supportable connection between the reasons cited and the conclusion that the petitioner is not credible. In cases of this nature, where the principal and frequently the only source of evidence is the petitioner's testimony, it is particularly important that the credibility determination be based on appropriate factors.
 
 
 13
 Aguilera--Cota v. INS, 914 F.2d 1375, 1381 (9th Cir.1990). For example, we reversed a negative credibility finding based on minor omissions in an asylum application as "fatally flawed," holding that no nexus existed between the petitioner's failure to file a complete form and the IJ's conclusion. Id. at 1381-82. Identical reasoning applies here. The nexus is simply insufficient. See also Turcios v. INS, 821 F.2d 1396, 1400-01 (9th Cir.1987) (lying to INS about citizenship did not merit negative credibility finding); Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir.1988) (same; inconsistent dates in testimony); Martinez-Sanchez v. INS, 794 F.2d 1396, 1400 (9th Cir.1986) (same; inconsistent dates and minor discrepancies between application and testimony). In addition, omissions on the asylum application form "cannot, without more, properly serve as the basis for a finding of lack of credibility." Aguilera-Cota, 914 F.2d at 1382. As in those cases, the board's negative credibility finding here is not supported by substantial evidence.
 
 
 14
 As for the alleged inconsistencies cited by the BIA, a close look at the record reveals that they simply do not exist. The confusion over the dates of Suradi's trip to England was resolved with his explanation, on redirect examination, that he went to England in late 1985, remained there for five months, and embarked for home, as his passport stamp indicates, in March of 1986. His initial statement that he had no fear of returning to Jordan was immediately followed by a statement that he expected to be arrested if he returned.[2] In addition to describing the three arrests and beatings, he described life in Jordan as "unbearable" and stated that he was discriminated against and frequently accused of being a terrorist. Thus, the whole of his testimony clearly established that he had a genuine, subjective fear of future persecution if returned.
 
 
 15
 Finally, the board held that the fact that Suradi remained unharmed in Jordan for five months after the last arrest was inconsistent with his claim of persecution. We have repeatedly held that remaining in one's country for several months while making arrangements to flee "has only marginal probative value" and thus does not destroy an asylum claim. Ramirez Rivas v. INS, 899 F.2d 864, 871 (9th Cir.1990) (three month stay), vacated on other grounds, INS v. Rivas, No. 90-1223, 1992 U.S. Lexis 194 (Jan. 13, 1992); Rodriguez v. INS, 841 F.2d 865, 871 (9th Cir.1987) (six month stay); Damaize-Job v. INS, 787 F.2d 1332, 1336 (9th Cir.1986) (two year stay). Thus, none of the three alleged inconsistencies cited by the board supports its refusal to credit Suradi's testimony, nor does any other substantial evidence. See Aguilera-Cota, 914 F.2d at 1383. Accordingly, the BIA erred by denying asylum and withholding of deportation based on lack of credibility alone.
 
 
 16
 We must next determine the proper remedy for the BIA's erroneous credibility finding. We have made it clear that a petitioner is entitled to an adequately reasoned BIA decision and that a BIA decision that denies relief without providing an adequate explanation for the denial must be reversed regardless of whether adequate reasons could be provided. See Mattis v. United States INS, 774 F.2d 965, 968 (9th Cir.1985) ("[W]hether or not Mattis presented sufficient evidence to establish a prima facie case of hardship, the BIA's failure to address the evidence presented or to articulate reasons for its negative conclusion was an abuse of discretion requiring reversal and remand."); Santana-Figuaroa v. INS, 644 F.2d 1354, 1357 (9th Cir.1981) ("To affirm on the theory that the Board necessarily considered whatever the petitioner asserted would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion."). Where the BIA has relied on an erroneous credibility finding to deny relief, a decision to affirm the board's denial on the different ground that the petitioner has failed to meet his burden would deny the petitioner his right to an adequate board decision and would substitute the court's determination for the board's. Thus, in Martinez-Sanchez, we reversed the BIA's credibility finding and then stated that "[t]he record furnishes no basis for determining what the BIA's decision would have been absent the credibility determination. Accordingly, we reverse the board's determination and remand for a determination of petitioner's claim for withholding of deportation without reliance upon the adverse credibility determination." 794 F.2d at 1400.
 
 
 17
 In the instant case, the BIA decision does not make clear what the board would have decided in the absence of its erroneous credibility determination. Every reason it gives for denying relief is intertwined with its determination that the petitioner's testimony lacked credibility. The board states that the petitioner's account was insufficiently detailed and then concludes that "[s]uch lack of detail and consistency raises doubts about the overall veracity of the respondent's claim and is insufficient in itself to establish the respondent's asylum eligibility." A.R. at 5. Similarly, the board states that Suradi "has not provided sufficient evidence establishing the motivation of his alleged persecutors," and then concludes that "[h]ere, [Suradi] provided only superficial, cursory responses to questions posed by his counsel and the trial attorney about the nature of his alleged interrogations by the Jordanian police. These responses are alone insufficient to show that the interrogations were politically motivated." A.R. at 5-6. The board's decision thus follows the simple pattern of stating that the testimony lacked the indicia of credibility and then concluding that it is insufficient to establish eligibility for relief. In such circumstances, we do not believe that the board has demonstrated what its decision would be absent the erroneous credibility finding.
 
 
 18
 Support for the proposition that the board has not made a determination independent of its credibility finding is the fact that it nowhere considers the State Department's Country Reports on Human Rights Practices regarding the situation in Jordan. It may be, as a factual matter, that given the actual manner in which persons with PLO affiliations were treated in Jordan during the pertinent period, petitioner would have had a substantial obstacle to overcome in persuading the BIA that the Jordanian police were engaged in political persecution. In short, the State Department's report might well have provided substantial support for the BIA's denial of relief. Accordingly, had the BIA made a determination to deny relief independent of its credibility finding, it would likely have supported its denial by citing to the Country Report. Its failure to do so, particularly in light of the fact that the IJ did rely on that report, suggests that its decision to deny relief was based solely on its determination that Suradi lacked credibility.
 
 
 19
 Accordingly, the BIA decision is inadequate to support the board's denial of Suradi's claim for relief from deportation. We thus remand the petition for a renewed consideration of his claim. The petition for review is GRANTED, the board's decision REVERSED, and the case REMANDED for further proceedings not inconsistent with this disposition.
 
 
 20
 REVERSED AND REMANDED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 21
 
 
 [1]
 The colloquy also reveals the difficulty of basing appellate review upon an inadequate transcription. For example, when asked why he didn't want to return to Jordan, Suradi replied:
 A. Because if I don't go to Jordan than I know I won't get (indiscernible) the Government in Jordan won't trust me again.
 Q. ... did you say will arrest you?
 A. Yeah.
 Q. Why is that?
 A. Because the Government he knows about my daddy work with PLO. (AR 48-49)
 Q. What would happen if you went back to Jordan?
 A. Well, if I caught I get (indiscernible) again. (AR 55)
 
 
 [2]
 See n. 1, supra