53 F.3d 338
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Harsh KUMAR, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70795.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 17, 1995.*
Decided April 24, 1995.
 
 Before: NORRIS, WIGGINS and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Petitioner, Harsh Kumar, admitted before an Immigration Judge ("IJ"), that he was deportable under Section 241(a)(1)(B) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. Sec. 1251, for having entered the United States without inspection. He then filed applications for asylum, (Section 208 of the Act, 8 U.S.C. Sec. 1158(a)), withholding of deportation, (Section 243(h), 8 U.S.C. Sec. 1253(h)), and voluntary departure (Section 244(e), 8 U.S.C. Sec. 1254(e)).
 
 
 3
 On February 12, 1993, the IJ conducted a hearing on Kumar's applications. At the hearing, Kumar testified that he is from the state of Punjab, India, a state rife with ethnic struggles between Sikh separatists and Hindus. (Although Hindus are the majority group in India as a whole, Sikhs comprise the largest religious group in Punjab.) Kumar is a Hindu, and he belongs to a group called Hindu Shiv Sehna. He provided few details concerning the group, except to say that it is made up of Hindus, and its purpose is to "help" or "support" Hindus who face victimization from Sikh extremists in Punjab. Kumar testified that as a member of the group, he participated in rallies and demonstrations and distributed literature. It appears that the "help" to which Kumar referred usually came in the form of physical confrontations with Sikh groups, however. Kumar testified that he was arrested many times after participating in such confrontations. He also testified that he was beaten during his subsequent detainments, that he was threatened with death if he did not leave Punjab, and that other members of Hindu Shiv Sehna had been killed. It appears from his testimony that the threats were from Sikh police, although this is not clear.
 
 
 4
 The IJ found Kumar to be an incredible witness. He thus discounted Kumar's testimony, which provided the only evidence of past persecution, and the only basis for a claim of fear of future persecution. The IJ noted that there was no evidence that Kumar's arrests were illegal, or that "any problems that he might face in India have been based on one of five grounds mentioned in the definition of a refugee in Sec. 101(a)(42)(A) of the Act." Accordingly, the IJ denied Kumar's various requests for relief and ordered him deported to India.
 
 
 5
 Kumar appealed the decision of the IJ to the Board of Immigration Appeals ("BIA"). The BIA agreed that Kumar was an incredible witness, and that there was no evidence of persecution by the police. Accordingly, it affirmed the decision of the IJ. Kumar appeals, arguing that the IJ and BIA incorrectly found his testimony incredible. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a, and we affirm.
 
 DISCUSSION
 I. Asylum
 
 6
 Under 8 U.S.C. Sec. 1158(a), an applicant for asylum must demonstrate that he meets the statutory definition of a "refugee." Barraza Rivera v. INS, 913 F.2d 1443, 1449 (9th Cir.1990). 8 U.S.C. Sec. 1101(a)(42)(A) defines a "refugee" as:
 
 
 7
 [A]ny person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....
 
 
 8
 Refugee status may be established by a showing of either past persecution or likely future persecution. Acewicz v. INS, 984 F.2d 1056, 1061-62 (9th Cir.1993). We agree with the BIA and the IJ that Kumar failed to establish past persecution or a well-founded fear of future persecution in India.
 
 
 9
 The only evidence indicating that Kumar had a well-founded fear of persecution was his own testimony concerning past persecution, which the IJ found incredible. We review that credibility finding for substantial evidence. Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987). Because the IJ is in the best position to evaluate a witness' credibility, we accord his credibility findings substantial deference. Id. A lack of credibility finding, however, must be supported by "a specific, cogent reason for [the IJ's] disbelief." Camaize-Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986).
 
 
 10
 The IJ found Kumar's testimony untrustworthy for two reasons. First, he found Kumar's explanation of why he obtained various inconsistent and illegal immigration documents shortly after his arrival in the United States incredible. Second, he found Kumar's description of why he feared returning to India incredible. Both findings are supported by the record.
 
 
 11
 a. Invalid Documents
 
 
 12
 Various improper pieces of identification that Kumar obtained subsequent to his 1990 entry into this country were admitted into evidence. In the span of five months, Kumar obtained three different California identification documents. He listed a different birthdate on the first card than on the subsequent two cards, and listed a different address on the third card than on the first two. He admitted that he never had lived in the city listed on the third document, but explained that he was new to this country, and simply did whatever other people told him to do. This was also Kumar's explanation for why he went to Alaska two months later, in December of 1990, and obtained a work permit in that state, even though he had never lived, or worked, in Alaska.[1]
 
 
 13
 The IJ found it incredible that a businessman (Kumar is a partner in an Indian rice-shelling business), would obtain official documents without inquiring into their nature. We agree. Kumar argues that his rice-shelling business does not indicate the level of sophistication that the IJ envisioned. But the aforementioned errors are not technical or sophisticated ones. Kumar listed an erroneous birthdate and address on official identification papers. He traveled all the way from California to Alaska to get a work permit. To get that permit, he had to live in the United States since 1982, and he had never entered the country prior to 1990. To find his explanation, that he never inquired into the propriety of these actions, but simply accepted the advice of others, incredible, is eminently reasonable. As the BIA wrote: "[w]hatever the level of [Kumar's] sophistication, this constitutes fraud, and to claim ignorance thereof is inherently not believable." (emphasis added).
 
 
 14
 We also disagree with Kumar's assertion that even if it is true that he made false statements concerning his immigration documents, this finding reveals nothing about the veracity of his statements concerning his affairs in Punjab. Turcios, upon which Kumar relies, stands for the proposition that an immigrant's previous fraudulent attempts to gain entry into the United States do not necessarily mean that his testimony before the IJ is untrustworthy. 821 F.2d at 1400-01. But in this case it is not the fact that Kumar lied to the INS in the past that makes his testimony incredible: it is his testimony before the IJ, itself, concerning those fraudulent transactions, that was found incredible.[2] A finding that Kumar lied extensively in front of the IJ concerning his immigration affairs is certainly a proper consideration in determining whether he also lied before the IJ concerning his affairs in India.
 
 
 15
 b. Testimony Concerning India
 
 
 16
 Further, the IJ's finding that Kumar's testimony concerning India, in particular, was untrustworthy, is also supported by substantial evidence. The IJ called Kumar's account "vague and incoherent." We agree. Kumar provided little information about what Hindu Shiv Sena is, how it operates, or the means by which it pursues its goals. He also did not describe the confrontations that led to his arrest.[3] He used the terms "Sikh" and "police" alternatively when referring to those who mistreated him. His argument that most police in Punjab are Sikh, and that his use of the terms interchangeably is therefore not inconsistent, is unconvincing. Reading the record carefully, Kumar's testimony concerning the identity of his persecutors is indeed often vague and inconsistent. At one point, for example, Kumar states that "they" sent him letters; that "they" came to his house and argued with him; that he then went to the police station where "they" arrested him. It would appear that the "they" to which he referred were the Sikh police, but when asked directly who sent the letters, he stated "Sikhs group," not Sikh police officers.
 
 
 17
 Further, even overlooking any vagueness or ambiguity, the record does not support Kumar's claim of persecution by either non-police Sikh militants or Sikh police. As to the former, Kumar does not describe mistreatment he has suffered at the hands of Sikh militants. Rather, he describes clashes where he, as part of his own, pro-Hindu group, willingly confronted Sikh militant groups.
 
 
 18
 As to the latter, Kumar does consistently allege mistreatment at the hands of Sikh police. But the record does not support his alleged fear of this group, either. Rather, this fear is contradicted by the documentary evidence presented. As the BIA noted, the State Department's Country Reports on Human Rights Practice for 1992 at 1133-35, and Amnesty International's Report 1992 at 140, both indicate that the police represent the Indian government in its disputes with Sikhs, and not the Sikh militants, who are the government's opponents. The BIA also noted that this state of affairs was consistent with the Board's own experience, where Sikhs often request asylum based upon mistreatment at the hands of the Indian police. Kumar has failed to produce any evidence of Punjabi police persecution of Hindus to contradict this documentary evidence.
 
 
 19
 The IJ provided specific, cogent reasons for his disbelief of Kumar's testimony. This finding is supported by substantial evidence. Because the only evidence of a fear of persecution was this discounted testimony, the BIA did not abuse its discretion in ruling that Kumar does not meet the statutory requirements for asylum.[4]
 
 II. Voluntary Departure
 
 20
 The Act gives the IJ and the Board "broad discretionary powers in granting or denying requests for voluntary departure." Villanueva-Franco v. INS, 802 F.2d 327, 329 (9th Cir.1986). We review the BIA's decision under an arbitrary and capricious standard. Hernandez-Luis v. INS, 869 F.2d 496, 499 (9th Cir.1989).
 
 
 21
 Kumar argues that the IJ denied his request for voluntary departure solely on the IJ's negative credibility finding, which Kumar believes was unfounded. As described above, however, we find that the negative credibility finding was well supported. This finding, in itself, is enough to make Kumar statutorily ineligible for voluntary departure. Abedini v. INS, 971 F.2d 188, 193 (9th Cir.1991); 8 U.S.C. Sec. 1101(f)(6).
 
 
 22
 Furthermore, as the INS correctly points out, the burden is on the applicant for voluntary departure to prove that he is statutorily eligible and that the equities merit a favorable exercise of the Board's discretion. Abedini, 971 F.2d at 192-93. Here, Kumar has failed this burden of proof. He has made no effort to establish any equities in his favor that would warrant a discretionary grant of voluntary departure. This is true not only before the IJ and the BIA, but also before this panel.
 
 III. Withholding of Deportation
 
 23
 An applicant only qualifies for a withholding of deportation if he shows a "clear probability of persecution" upon return to his country of origin. INS v. Stevic, 467 U.S. 407, 430 (1984); Acewicz, 984 F.2d at 1062. This is a more stringent standard than the "well-founded fear" standard required by Section 208 for a grant of asylum. Acewicz, 984 F.2d at 1062. Because Kumar cannot meet the lower standard of Section 208, he necessarily fails to show a "clear probability" of persecution under Section 243(h). See id.
 
 CONCLUSION
 
 24
 For the forgoing reasons, we AFFIRM the judgment of the BIA, and DISMISS Kumar's appeal.
 
 WILLIAM A. NORRIS, Circuit Judge, concurring:
 
 25
 While I have serious reservations about the rationale given by the BIA and the IJ for deciding that the petitioner was an incredible witness, I agree that the decision of the BIA should be affirmed. Even taking Kumar's testimony as credible, I agree that Kumar failed to sustain his burden of proving that he "is unable or unwilling to return to ... [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. Sec. 1101(a)(42)(A).
 
 
 26
 Kumar's story of abuse by the police was sketchy. He indicated that he was arrested as a result of his membership in a group whose mission was to "support Hindus" against Sikh separatists. The "support" Kumar described apparently often took the form of "confrontations" with Sikh militants. Kumar indicated that he was arrested for his involvement in these confrontations. This evidence does not show that Kumar was persecuted because he is a Hindu or because of his political opposition to Sihk separatism. If anything, the evidence suggests that he was arrested because of his involvement in acts of violent vigilantism.
 
 
 27
 Furthermore, Kumar had the burden of proving that he was "unable or unwilling to return to ... [his] country because of persecution." 8 U.S.C. Sec. 1101(a)(42)(A) (emphasis added). It is not enough to show that Kumar may have been unable to return to his home province because of persecution. See Quintanilla-Ticas v. INS, 783 F.2d 955, 957 (9th Cir.1986); Diaz-Escobar v. INS, 782 F.2d 1488, 1493 (9th Cir.1986). Kumar did not attempt to show that he could not settle peacefully in other parts of India. The documentary evidence suggests that he could. See State Department's Country Reports on Human Rights Practice for 1992 at 1135.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 When asked if he applied anywhere else besides Alaska for a work permit, he stated: "I don't have any knowledge about that." When asked again, however, he stated: "I don't want to answer this."
 
 
 [2]
 Unlike Kumar, Turcios admitted before the IJ that he had lied to immigration authorities, perhaps even bolstering his credibility in this later proceeding
 
 
 [3]
 The IJ's conclusion, that the arrests may have been perfectly legal, is supported by the record. Based upon this conclusion, the IJ found that the evidence failed to show that any problems Kumar faced in India were predicated on one of the five grounds listed in Section 101(a)(42)(A)
 
 
 [4]
 In its response to the IJ's query regarding Kumar's claim, the State Department provided another reason for finding that Kumar does not meet the definition of refugee. That is, even if everything he said about Punjab were true, in the rest of India Hindus are in the majority. There is no evidence that Kumar could not move to another part of his home country and live peacefully