**Zubaida NAJAF–ALI, a.k.a. Zobida Nayibkhil, Petitioner,**

**v.**

**Edwin MEESE, Attorney General of the United States and David N. Ilchert, District Director of the United States Immigration and Naturalization Service, Respondents.**

**No. C–86–4786 SAW.**

United States District Court, N.D. California.

Feb. 13, 1987.

Miriam Aroni Krinsky, Hufstedler, Miller, Carlson & Beardsley, Los Angeles, Cal., for petitioner.

Joseph P. Russoniello, U.S. Atty., Larry J. Gallagher, Sp. Asst., San Francisco, Cal., for respondents.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

### I. SUMMARY

Zubaida Najaf-Ali, an elderly native of Afghanistan, petitions for a writ of habeas corpus. Upon entering this country in June, 1982, she was deemed by an immigration inspector to be "excludable" for lack of a valid visa. In a hearing before an immigration judge ("IJ") in January, 1985, petitioner admitted excludability, but sought asylum as a "refugee," or alternatively, "withholding of deportation" on the grounds of likely persecution. The IJ denied this relief, ordering her excluded and deported to Afghanistan. The Board of Immigration Appeals ("BIA") dismissed her appeal in March, 1986.

Her petition here claims that (1) the decisions of the IJ and the BIA were not supported by substantial evidence; (2) the legal standards for granting political asylum and "withholding of deportation" were misapplied; (3) her right to due process was violated because her children were not allowed to testify at the exclusion hearing; (4) she was denied due process, also, because the interpreter at the hearing spoke a different dialect than that spoken by petitioner; (5) she received ineffective assistance of counsel; and (6) respondents should be estopped from deporting her because of delay in concluding the exclusion proceedings. On September 15, 1986, this Court granted petitioner's application for a temporary restraining order and order to show cause.

The Court finds that the BIA's decision is not supported by substantial evidence, and that petitioner is "more likely than not" to be persecuted under the standard for "withholding of deportation." Therefore, she also meets the criterion for consideration of asylum based upon a "well-founded fear of persecution." The Court also finds that petitioner was deprived of due process when the IJ excluded the testimony of her children. The Court further finds that respondents violated regulations governing the timing of exclusion proceedings and that petitioner may have been prejudiced by the resulting two-year delay. The Court has concluded that petitioner's claims of inadequate translation and ineffective assistance of counsel lack merit.

## II. FACTUAL BACKGROUND

The following facts are based upon the uncontested testimony of petitioner. Both the BIA and the IJ accepted her testimony as true.[1]

Prior to coming to the United States, petitioner lived with her husband and children in Afghanistan. Her husband was a retired military officer loyal to the deposed king. Approximately one year after the Russian invasion and occupation, petitioner's husband was abducted from their house and has not been seen since. Like their father, petitioner's six children resisted allegiance to the communist government. They refused to join a youth organization of the communist party. One of her sons was imprisoned for two months for antigovernment sentiments. Her daughter, a teacher, was demoted for refusing to teach government doctrine. Petitioner's children finally fled Afghanistan at her direction. One settled in India; the other five became lawful permanent residents of the United States. Afghan government agents thereafter questioned petitioner as to the whereabouts of her children. Three of petitioner's siblings were jailed by the government. Petitioner, fearing for her life, fled to India in 1982. Shortly thereafter, she came to the United States, where she was deemed to be "excludable" under section 212(a)(20) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1182(a)(20), because she lacked a valid immigration visa. These proceedings ensued.

## III. PROHIBITION AGAINST DEPORTATION UNDER SECTION 243(h)

Aliens who fear persecution in their native country may seek two forms of relief. Section 243(h) of the Act, 8 U.S.C. § 1253(h), prohibits the Attorney General from deporting an alien who establishes that it is "more likely than not that she would be subject to persecution." *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). An alien may also avoid deportation by obtaining political asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a). To obtain this relief, the alien must demonstrate that she is a "refugee," i.e. a person with a "well-founded fear of persecution" in the native country. Section 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The Attorney General has discretion to grant asylum to an alien who qualifies as a "refugee." 8 U.S.C. § 1158(a).

The IJ and BIA decided that petitioner demonstrated neither a "well-founded fear" of persecution under the standard for asylum nor that she was "more likely than not" to be persecuted under the standard for "withholding of deportation."

When, as here, the BIA has disposed of both claims in a single proceeding, a reviewing court considers first the decision regarding "withholding of deportation." *Bolanos-Hernandez v. INS*, 767

---

1. The IJ stated he did not find petitioner to be "entirely credible," but nevertheless analyzed petitioner's claim of persecution assuming *arguendo* the truth of her testimony. The opinion of the BIA characterizes the IJ as having accepted the truth of petitioner's testimony. The Court accepts the BIA's characterization. If the IJ did not so accept her testimony, he erred in excluding corroborative testimony by her children. Moreover, he made no finding supporting an adverse determination regarding credibility. *See Martinez-Sanchez v. INS*, 794 F.2d 1396, 1400 (9th Cir.1986).

F.2d 1277, 1283 (9th Cir.1984).[2] The standard of review is whether or not the decision is supported by "substantial evidence." *McMullen v. INS,* 658 F.2d 1312, 1316 (9th Cir.1981). The BIA's decision that petitioner was not "more likely than not" to be persecuted in Afghanistan is not so supported.

■ The BIA and the IJ based their decisions upon two principal inferences. First, they inferred that petitioner came to the United States because there was no one left to support her in Afghanistan. Second, they inferred that there was no evidence that petitioner was in danger in Afghanistan.

There is, indeed, evidence that when petitioner came to the United States, she was motivated in part by her desire to regain the companionship and support of her family. Much of this evidence, however, consists of petitioner's testimony as to why she left India, not her reasons for leaving Afghanistan four months earlier. It is not surprising that, having escaped from Afghanistan into India, petitioner was no longer preoccupied with the persecution she faced in Afghanistan, but instead focused on being reunited with her children in the United States. When petitioner was asked specifically her reasons for leaving Afghanistan, she referred to the persecution of her family and her fear for her life along with her desire to be reunited with her children. Thus, the record does not support the inference of the BIA and the IJ that petitioner was unlikely to be persecuted because she desired to be reunited with her family. *See Garcia-Ramos v. INS,* 775 F.2d 1370, 1374–75 (9th Cir.1985) (it is not inconsistent with a claimed fear of persecution that a refugee, after he flees his homeland, comes to the United States seeking economic opportunities; nor need fear of persecution be an alien's only motivation for fleeing).

■ The second basis for the BIA's denial of withholding of deportation was the conclusion of the BIA and the IJ that petitioner was not in danger because she herself was never accused, threatened, or arrested. This conclusion is not supported by substantial evidence in the record.

The opinion of the IJ errs in stating that petitioner was not in danger because she continued to live in Afghanistan for two years after her husband was abducted. In fact, uncontradicted evidence shows that petitioner lived in Afghanistan for only nine months thereafter. During that time, she sent her children out of Afghanistan. Government agents came to her house to question her regarding the whereabouts of the children, whose resistance to the communist party had resulted in a jail term for one son and a professional demotion for petitioner's daughter. Petitioner feared for her life. Of the members of her family who still remained in Afghanistan, her husband was still missing and three siblings were in jail. Thus, regardless of whether petitioner was personally threatened with physical harm, the foregoing uncontradicted evidence shows that the circle of persecution of her family was drawing closer and closer to petitioner herself. Had she stayed in Afghanistan, it was "more likely than not" that she would be persecuted. The findings of the BIA and IJ to the contrary are not supported by substantial evidence. Petitioner therefore may not be deported.

The Court now turns to an examination of petitioner's other contentions to determine what bearing they may have upon disposition of this matter upon remand.

## IV. DUE PROCESS

Petitioner argues that she was denied due process of law at the exclusion hearing because (1) the IJ erroneously excluded her children's testimony; (2) the interpreter spoke a different dialect from that spoken by petitioner; and (3) petitioner received ineffective assistance of counsel. Careful review of the record fails to support the

---

**2.** If the court concludes that the alien has met the standard for withholding of deportation, then it need go no further, since the less-stringent "well-founded fear" standard for asylum will *a fortiori* have been met. *Bolanos-Hernandez,* 767 F.2d at 1283.

second or the third claims. The Court now considers whether petitioner was denied due process when the IJ excluded the testimony of her children.

The Supreme Court has held that for "an alien on the threshold of initial entry[,] ... the procedure authorized by Congress is ... due process...." 1A C. Gordon & H. Rosenfield, *Immigration Law and Procedure* § 3.18, at 3–180 (1986), *quoting Shaughnessy v. Mezei*, 345 .U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956 (1953). Congress has, in turn, commanded that a hearing be given to those whose right of entry is disputed. *Id.* at 3–182, *citing* 8 U.S.C. §§ 1225, 1226. When a hearing is required, it must be fairly conducted. *Id.*, *citing Chin Yow v. U.S.*, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369 (1908). "Therefore it is correct to state that similar requirements of fairness ordinarily govern exclusion and deportation cases, and an alien generally can be barred from entry only after a fair hearing." *Id.*

An alien subject to exclusion proceedings has the right to "a reasonable opportunity to present evidence in his own behalf...." 8 C.F.R. § 236.2(a) (1986). Petitioner argues that the IJ erred in refusing to permit two of her children to testify.

The Supreme Court has stated that in evaluating the constitutional sufficiency of procedures "in any case," courts must consider (1) "the interest at stake for the individual"; (2) "the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards"; and (3) "the interest of the government of using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982).

With respect to the first prong of the above analysis, the Court in the same case held that for an alien in an exclusion proceeding, the interest at stake is "without question, a weighty one. She stands to lose the right 'to stay and live and work in this land of freedom.' " *Id.*, *citing Bridge v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1945). The record contains reports of human rights organizations and the United States Department of State which amply demonstrate the loss of "freedom" that would accompany petitioner's forced return to her country. *See Zavala-Bonilla v. INS*, 730 F.2d 562, 564 (9th Cir.1984) (general information concerning oppressive conditions is relevant to support specific information relating to individual's well-founded fear of persecution).

Under the first prong of its analysis, the Supreme Court in *Landon* also noted that the alien in that case might "lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual." 459 U.S. at 34, 103 S.Ct. at 330. Petitioner here is confronted with losing the right to be with her family. Five of her six children reside in the U.S. The sixth resides in India, which has refused to admit petitioner in the event she is deported. Ex. 6 to Decl. of Petit. Counsel.

■ The second step in the *Landon* analysis calls for determining to what extent the IJ's refusal to hear the testimony of petitioner's children created a risk of an erroneous determination of the likelihood of persecution. The IJ excluded the testimony because he mistook counsel's purpose to be mere corroboration of petitioner. The children could have little influence on his decision, the IJ stated, because they would naturally be biased in favor of their mother. Exclusion of testimony on such a basis is improper. *Zavala-Bonilla*, 730 F.2d 562, 565 (9th Cir.1984); *accord, McMullen v. INS*, 658 F.2d 1312, 1319 (9th Cir.1981).[3] Moreover, counsel offered the

---

3. In *Zavala*, the court reversed the BIA's denial of asylum and withholding of deportation, stating that the BIA improperly "waived aside" four letters from petitioner's friends. "While one might infer that her friends in El Salvador would tend to write supportive letters, it is diffi- cult to imagine, given her circumstances, what other forms of testimony [petitioner] could readily present. She could hardly ask the authorities in El Salvador to certify that she would be persecuted should she return." 730 F.2d at 565.

testimony for more than mere corroboration. Specifically, he told the IJ they would testify to the basis upon which they applied to the American embassy for refugee status. "[I]f it could be established that the basis is the same as the basis of events by the Applicant, I would request the court to take that into consideration." In other words, the children might testify to instances of persecution or reasons to fear persecution that might also apply to petitioner. If so, their testimony would have gone beyond "corroboration." Excluding it created a significant "risk of erroneous deprivation" of petitioner's rights under the standard of *Landon.*

Finally, *Landon* requires the above factors to be weighed against "the interest of the government of using the current procedure rather than additional or different procedures." In *Landon,* the Supreme Court said that "[t]he Government's interest in efficient administration of the immigration laws at the border is also weighty." 459 U.S. at 34, 103 S.Ct. at 330. Allowing the testimony of petitioner's children would not have significantly harmed the "efficient administration of the immigration laws at the border," since no new hearing would have been required.

■ In summary, the Court has balanced the competing interests as mandated by *Landon* and finds that the scale tips strongly in favor of petitioner. While it is impossible to tell in advance how credible and probative the testimony of her children will be on the issue of persecution of petitioner, the Court finds that the magnitude of petitioner's "interest" in staying out of Afghanistan makes unacceptable even a small risk of erroneously depriving her of it. The Supreme Court has made clear that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely in the control of the Executive and Legislature." 459 U.S. at 34, 103 S.Ct. at 330. The Court added that the "role of the judiciary ... does not extend to imposing procedures that merely displace congressional choices of policy." *Id.* at 34–35, 103 S.Ct. at 330.

This court will not be "displacing congressional choices of policy" with its holding today, however. Congress itself has authorized regulations giving aliens the right in exclusionary proceedings to call witnesses on their behalf.

## V. PREJUDICE TO PETITIONER FROM DELAY IN EXCLUSION PROCEEDINGS

Petitioner argues that the government is estopped from excluding or deporting her because of the lengthy and unexplained delay in concluding her proceedings. On November 19, 1982, her exclusion hearing was adjourned to allow the State Department to issue an advisory opinion. The opinion was issued in March, 1983, three months later. Nevertheless, petitioner's hearing did not resume until January, 1985, more than two years after the adjournment. This delay violated an INS regulation limiting to 30 days deferral of exclusion proceedings while an advisory opinion is obtained. 8 C.F.R. § 236.3 (1986).

■ Violation of an INS regulation renders deportation unlawful if it prejudices the interests of the alien protected by the regulation. *Florez-De Solis v. INS,* 796 F.2d 330, 336 (9th Cir.1986). Petitioner argues that the delay in her exclusion proceeding prejudiced her because (1) her health deteriorated, making the prospect of returning to Afghanistan even more dangerous; (2) the government of India indicated that it is no longer willing to accept her were she to leave the United States; and (3) conditions within Afghanistan worsened during the adjournment.

■ Respondents failed to address these claims in their papers on this petition. The Court notes *sua sponte,* however, that petitioner did not raise these arguments in her appeal before the BIA. She has therefore failed to exhaust her administrative remedies as to those claims. *Florez-DeSolis v. INS,* 796 F.2d 330, 335 (9th Cir.1986), *citing Tejeda-Mata v. INS,* 626 F.2d 721, 726 (9th Cir.1980), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982). The doctrine of exhaustion of administra-

tive remedies, however, is designed to promote judicial convenience. 2 C. Gordon & H. Rosenfield, *Immigration Law & Procedure* § 8.4b, at 8–30. As such, the doctrine is subject to variations and exceptions. *Id.* Since the Court is remanding this matter for the purpose of allowing the testimony of petitioner's children, there will be little judicial inconvenience caused by allowing petitioner to present evidence supporting her claim of prejudice.

Based upon the foregoing findings and conclusions,

IT IS HEREBY ORDERED THAT

(1) the petition for a writ of habeas corpus is granted;

(2) the decision of the BIA, affirming the denial of withholding of deportation, is reversed;

(3) on remand, petitioner shall be allowed to present the testimony of her children and shall also be allowed to present testimony in support of her claim of prejudice caused by the delay in her exclusion proceedings;

(4) the matter is remanded to allow effective exercise of discretion in granting or denying political asylum after consideration of such testimony.