### Alfredo FORTI and Debora Benchoam, Plaintiffs,

v.

### Carlos Guillermo SUAREZ-MASON, Defendant.

No. C-87-2058-DLJ.

United States District Court, N.D. California.

July 6, 1988.

As Amended July 25, 1988.

Thomas J. Long of Morrison & Foerster, San Francisco, Cal., and David Cole, Center for Constitutional Rights, New York City, New York, for plaintiffs.

Jack Hill, San Francisco, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING MOTION FOR RECONSIDERATION

JENSEN, District Judge.

On October 6, 1987 this Court issued an Order which, in part, denied defendant's Motion to Dismiss plaintiffs' claims for "Official Torture," "Prolonged Arbitrary Detention," and "Summary Execution." The Court granted the Motion to Dismiss the claims for "Disappearance" and for "Cruel, Inhuman or Degrading Treatment." *See, e.g., Forti v. Suarez–Mason,* 672 F.Supp. 1531, 1540–43 (N.D.Cal.1987). On November 18, 1987 plaintiffs filed a Motion for Reconsideration of that Order through counsel Thomas J. Long and Jordan Eth, et al. Defendant has filed no opposition to the Motion. The Court has considered the memoranda and numerous legal authorities submitted for the first time on this Motion, and the Motion is GRANTED in part and DENIED in part.

### I.

Plaintiffs are two Argentine citizens currently residing in the United States. Their initial complaint in this action alleged numerous causes of action against defendant, a former Argentine general, growing out of events which allegedly occurred in the mid to late 1970s during the Argentine military's so-called "dirty war" against suspected subversion. The factual allegations

of that complaint are detailed in this Court's October, 1987 Order, published at 672 F.Supp. 1531, 1537–38.[1] Plaintiffs predicated federal jurisdiction under 28 U.S.C. § 1350 (the "Alien Tort Statute"). The Court's previous Order held that the Alien Tort Statute provides a cause of action for "international torts," which the Court defined as follows:

> "[V]iolations of current customary international law, [which] are characterized by universal consensus in the international community as to their binding status and their content. That is, they are universal, definable, and obligatory international norms."

672 F.Supp. at 1541.

The Court went on to hold that "on the basis of the evidence submitted" plaintiff Forti had failed to establish "the requisite degree of international consensus which demonstrates a customary international norm" in regard to his claim for causing the disappearance of his mother. The Court also dismissed both plaintiffs' claims for "cruel, inhuman or degrading treatment," holding that plaintiffs had failed to bring forth sufficient evidence of international consensus, and moreover that the tort "lacks readily ascertainable parameters." *Id.* at 1542–43.

Plaintiffs subsequently filed this Motion, supported by numerous international legal authorities, as well as affidavits from eight renowned international law scholars.[2] The Court has reviewed these materials and concludes that plaintiffs have met their burden of showing an international consensus as to the status and content of the international tort of "causing disappearance." Accordingly, the motion to reconsider is GRANTED in this regard and the claim is reinstated. The Court also concludes that plaintiffs have again failed to establish that there is any international

consensus as to what conduct falls within the category of "cruel, inhuman or degrading treatment." Absent such consensus as to the content of this alleged tort, it is not cognizable under the Alien Tort Statute. Therefore, the Motion to Reconsider dismissal of this claim is DENIED.

## II.

■ As stated above and in the October, 1987 Order, the Court interprets the Alien Tort Statute as providing a cause of action for "international torts." 672 F.2d at 1540. The plaintiff's burden in stating a claim is to establish the existence of a "universal, definable, and obligatory international norm[ ]." *Id.* To meet this burden plaintiffs need not establish unanimity among nations. Rather, they must show a general recognition among states that a specifric practice is prohibited. It is with this standard in mind that the Court examines the evidence presented by plaintiffs.

## A.

■ In the Second Amended Complaint, plaintiff Forti alleges a claim for the "Disappearance and Presumed Summary Execution" of his mother. *Second Amended Complaint,* ¶ 63–67. Specifically, he alleges that his mother, along with he and his brothers, were seized from an airplane on February 18, 1977 "by police and military officials acting under the direction and control of defendant Suarez–Mason." *Id.* ¶ 3. The family was then taken to a detention center where they were held for several days.

On the sixth day of their detention they were bound, blindfolded and taken outside. The five boys, aged 8–16, were put in one car, while Mrs. Forti was put in another. The boys were then released on a Buenos Aires street. *Id.* ¶ 10–17. Mrs. Forti was

---

**1.** A more elaborate discussion of the historical context of the "dirty war" is contained in this Court's Order Certifying Extraditability in *The Requested Extradition of Carlos Guillermo Suarez–Mason,* 694 F.Supp. 676, CR–87–23–Misc.— DLJ (filed April 27, 1988).

**2.** These include Richard Anderson Falk of Princeton University, Thomas Franck of New

York University, Louis Henkin of Columbia University, Richard B. Lillich of the University of Virginia, Phillipe Sands of Cambridge University and Boston College Law School, Henry J. Steiner of Harvard Law School, David Weissbrodt of the University of Minnesota Law School, and Burns H. Weston of the University of Iowa College of Law.

not released, and has not been seen to this day. Forti alleges that he and his brothers tried through all available channels to get their mother released. However, "[t]he Argentine government's response to all of these efforts was always the same—it refused to confirm or deny that Mrs. Forti had been abducted or was being detained." *Id.* ¶ 18–20.

The legal scholars whose declarations have been submitted in connection with this Motion are in agreement that there is universal consensus as to the two essential elements of a claim for "disappearance." In Professor Franck's words:

> The international community has also reached a consensus on the definition of a "disappearance." It has two essential elements: (a) abduction by a state official or by persons acting under state approval or authority; and (b) refusal by the state to acknowledge the abduction and detention.

*Franck Declaration,* ¶ 7. *See also Falk Declaration,* at 3; *Henkin Declaration,* ¶ 9; *Steiner Declaration,* ¶ 3, 5; *Weissbrodt Declaration,* ¶ 8(b); *Weston Declaration,* ¶ 5.

Plaintiffs cite numerous international legal authorities which support the assertion that "disappearance" is a universally recognized wrong under the law of nations. For example, United Nations General Assembly Resolution 33/173 recognizes "disappearance" as violative of many of the rights recognized in the Universal Declaration of Human Rights, G.A. Res. 217 A (III), adopted by the United Nations General Assembly, Dec. 10, 1948, U.N. Doc. A/810 (1948) [*hereinafter* Universal Declaration of Human Rights]. These rights include: (1) the right to life; (2) the right to liberty and security of the person; (3) the right to freedom from torture; (4) the right to freedom from arbitrary arrest and detention; and (5) the right to a fair and public trial. *Id.,* articles 3, 5, 9, 10, 11. *See also* International Covenant on Political and Civil Rights, G.A. Res. 2200 (XXI), adopted by the United Nations General Assembly, December 16, 1966, U.N. Doc. A/6316 (1966), articles 6, 7, 9, 10, 14, 15, 17.

Other documents support this characterization of "disappearance" as violative of universally recognized human rights. The United States Congress has denounced "prolonged detention without charges and trial" along with other "flagrant denial[s] of the right to life, liberty, or the security of person." 22 U.S.C. § 2304(d)(1). The recently published Restatement (Third) of the Foreign Relations Law of the United States § 702 includes "disappearance" as a violation of the international law of human rights. The Organization of American States has also denounced "disappearance" as "an affront to the conscience of the hemisphere and ... a crime against humanity." Organization of American States, Inter–American Commission on Human Rights, General Assembly Resolution·666 (November 18, 1983).

Of equal importance, plaintiffs' submissions support their assertion that there is a universally recognized legal definition of what constitutes the tort of "causing disappearance." The Court's earlier order expressed concern that "the sole act of taking an individual into custody does not suffice to prove conduct which the international community proscribes." 672 F.Supp. at 1543. Plaintiffs' submissions on this Motion, however, establish recognition of a second essential element—official refusal to acknowledge that the individual has been taken into custody. For example, the United Nations General Assembly has expressed concern at the

> difficulties in obtaining reliable information from competent authorities as to the circumstances of such persons, including reports of the persistent refusal of such authorities or organizations to acknowledge that they hold such persons, in custody or otherwise to account for them.

U.N. General Assembly Resolution 33/173 (December 20, 1978).

Likewise, the Organization of American States has recognized the importance of this element, commenting on the

> numerous cases wherein the government systematically denies the detention of individuals, despite the convincing evidence that the claimants provide to verify their

allegations that such persons have been detained by police or military authorities and, in some cases, that those persons are, or have been, confined in specified detention centers.

Organization of American States, Inter-American Commission on Human Rights, 1977 Annual Report, at 26. *See also* M. Berman & R. Clark, *State Terrorism: Disappearances*, 13 Rutgers L.J. 531, 533 (1982) ("The denial of accountability is the factor which makes disappearance unique among human rights violations.").

In the Court's view, the submitted materials are sufficient to establish the existence of a universal and obligatory international proscription of the tort of "causing disappearance." This tort is characterized by the following two essential elements: (1) abduction by state officials or their agents; followed by (2) official refusals to acknowledge the abduction or to disclose the detainee's fate. Upon review of the Second Amended Complaint it is clear that plaintiff Forti has sufficiently pled both these elements. *See Second Amended Complaint*, ¶ 3, 18. Therefore, the Motion to Reconsider is GRANTED in part and plaintiff Forti's claim is reinstated.[3]

### B.

■ In its October, 1987 Order the Court found that plaintiffs had stated claims under the Alien Tort Statute for "official torture," 672 F.Supp. at 1541, but had failed to state claims for "cruel, inhuman and degrading treatment." *Id.* at 1543. Plaintiffs have now combined their two previous claims to allege "torture or other cruel, inhuman or degrading treatment or punishment. *Second Amended Complaint*, ¶ 53–56. The Second Amended Complaint does not state precisely what alleged actions constitute the proposed tort. Rather, it merely incorporates *all* the factual allegations and alleges that these acts constitute "torture or other cruel, inhuman or

degrading treatment or punishment in violation of customary international law." *Id.*, ¶ 54.

In dismissing plaintiffs' earlier "cruel, inhuman or degrading treatment" claim this Court found that the proposed tort lacked "the requisite elements of universality and definability." 672 F.Supp. at 1543. Plaintiffs now submit the aforementioned declarations, *see supra* note 2, and several international legal authorities in support of their argument that "[t]he definition of cruel, inhuman or degrading treatment or punishment is inextricably related to that for torture." *Plaintiff's Memorandum*, at 20. Specifically, plaintiffs argue that the two are properly viewed on a continuum, and that "torture and cruel, inhuman or degrading treatment differ essentially in the degree of ill treatment suffered." *Id.* Thus while the latter treatment is not torture it is an analytically distinct tort which, in plaintiffs' view, is actionable under the Alien Tort Statute.

. Plaintiffs emphasize that virtually all international legal authorities which prohibit torture also prohibit cruel, inhuman or degrading treatment. For example, § 702 of the Restatement (Third) of the Foreign Relations Law of the United States: "A state violates international law if, as a matter of state policy, it practices, encourages, or condones ... torture or other cruel, inhuman or degrading treatment or punishment." Likewise, 22 U.S.C. § 2304(d)(1) lists "torture or cruel, inhuman or degrading treatment or punishment," among "gross violations of internationally recognized human rights." Article 5 of the Universal Declaration of Human Rights, *supra*, states that "[n]o one shall be subjected to torture or to cruel, inhuman or degrading treatment." *See also De Sanchez v. Banco Central De Nicaragua*, 770 F.2d 1385, 1397 (5th Cir.1985) (recognizing "right not to be ... tortured, or otherwise

---

**3.** Mrs. Forti has been missing for over ten years. It is now widely recognized that most, if not all, of the persons who disappeared in Argentina during the dirty war are now dead. *See generally Nunca Mas: The Report of the Argentine National Commission on the Disappeared* (1986).

Plaintiff Forti has therefore amended his original "Disappearance" claim to "Disappearance and Presumed Summary Execution." Because both "disappearance" and "summary execution" are cognizable under the Alien Tort Statute, they could also be pled as separate counts.

subjected to cruel, inhuman or degrading treatment").

While these and other materials establish a recognized proscription of "cruel, inhuman or degrading treatment," they offer no guidance as to what constitutes such treatment. The Restatement does not define the term. The cited statute (22 U.S.C. § 2304) and the Universal Declaration of Human Rights also both fail to offer a definition. The scholars whose declarations have been submitted likewise decline to offer any definition of the proposed tort. In fact, one of the declarations appears to concede the lack of a universally recognized definition. *See Lillich Declaration,* at 8 ("only the contours of the prohibition, not its existence as a norm of customary international law, are the subject of legitimate debate.").

This problem of definability is evidenced by the Second Amended Complaint. Plaintiffs simply incorporate all the factual allegations and without elaboration, allege that these constitute the alleged cruel, inhuman or degrading treatment. *Second Amended Complaint,* ¶ 53–56. However, the complaint alleges a wide range of discrete acts associated with the detentions. Some of the acts result in physical injury, some do not. Does the proposed tort require physical injury? If purely psychological harm is cognizable, as it would appear to be, is it actionable when caused by purely verbal conduct? Was it "cruel, inhuman and degrading treatment" for the military officials to threaten Mrs. Forti if she did not leave the airplane voluntarily? *Second Amended Complaint,* ¶ 11. Was it actionable conduct not to allow Mrs. Forti to talk to the commander of the detention center? *Id.* ¶ 13. Absent some definition of what constitutes "cruel, inhuman or degrading treatment" this Court has no way of determining what alleged treatment is actionable, and what is not.

Plaintiffs cite *The Greek Case,* 12 T.B. Eur. Conv. on Human Rights 186 (1969), for a definition of "degrading treatment" as that which "grossly humiliates [the victim] before others or drives him to act against his will or conscience." *Plaintiffs' Memorandum,* at 22. But this definitional gloss is of no help. From our necessarily global perspective, conduct, particularly verbal conduct, which is humiliating or even grossly humiliating in one cultural context is of no moment in another. An international tort which appears and disappears as one travels around the world is clearly lacking in that level of common understanding necessary to create universal consensus. Likewise, the term "against his will or conscience" is too abstract to be of help. For example, a pacifist who is conscripted to serve in his country's military has arguably been forced to act "against his will or conscience." Would he thus have a claim for degrading treatment?

To be actionable under the Alien Tort Statute the proposed tort must be characterized by universal consensus in the international community as to its binding status *and its content.* In short, it must be a "universal, *definable,* and obligatory international norm[ ]." *Forti,* 672 F.Supp. at 1541 (emphasis added). Plaintiffs' submissions fail to establish that there is anything even remotely approaching universal consensus as to what constitutes "cruel, inhuman or degrading treatment." Absent this consensus in the internal community as to the tort's content it is not actionable under the Alien Tort Statute. Therefore, the Motion to Reconsider the Dismissal of this claim is DENIED.

### III.

For the reasons stated above, the Court Orders as follows:

1. Plaintiffs are granted leave to file a Second Amended Complaint which includes plaintiff Forti's claim for "Disappearance and Presumed Summary Execution."

2. The Second Amended Complaint may also include claims for "Torture" or "Official Torture." However, the claims for "Torture or other Cruel, Inhuman or Degrading Treatment" are to be withdrawn before the complaint is filed.

IT IS SO ORDERED.