**Jagraj SINGH, Petitioner,**

**v.**

**David ILCHERT, District Director of the U.S. Immigration and Naturalization Service, Respondent.**

**No. C–92–1826–MHP.**

United States District Court,
N.D. California.

July 17, 1992.

Robert B. Jobe, Debbie Smith, Jobe & Melrod, San Francisco, Cal., for petitioner.

Paul Solon, Asst. U.S. Atty., Civ. Div., San Francisco, Cal., for respondent.

## MEMORANDUM AND ORDER

PATEL, District Judge.

Petitioner Jagraj Singh, a native and citizen of India who fled that country on October 30, 1991, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 et seq. and the Immigration and Nationality Act ("INA") § 106(B), 8 U.S.C. § 1105a(b). Petitioner asks this court to review a determination of the Board of Immigration Authority ("BIA") that petitioner is not eligible for either political asylum or withholding of deportation to India,

pursuant to INA §§ 208(a) and 243(h), 8 U.S.C. §§ 1158(a) and 1253(h) respectively. The BIA found that since petitioner was not a refugee for the purposes of political asylum eligibility, he was also not eligible for withholding of deportation. Petitioner contends that he is entitled to asylum and withholding of deportation.

## BACKGROUND

The factual background for this case is undisputed.[1] Petitioner Jagraj Singh is a 36 year old native and citizen of India. When petitioner left India on October 30, 1991, he left behind a wife and three children. Transcript of Deportation Hearing, attached as Ex. 3 to Petition for Writ of Habeas Corpus, ("Transcript") at 3. Petitioner was a Sikh farmer in the Punjab state. Transcript at 7–8. Although petitioner was not a member of any political party, he supported the Akali Dal movement, a political party which advocates religious and economic freedom for Sikhs. *Id.* at 8–9.

In February 1990, a group of armed Sikh separatists came to petitioner's home and demanded his assistance. Because he was afraid of the separatists, petitioner gave them food and the use of his jeep. *Id.* at 10–11. Petitioner's actions were reported to the police department. *Id.* at 11.

Soon thereafter, the police came to petitioner's house. They handcuffed Singh, beat him repeatedly with a rifle, and asked him about the militants. *Id.* When Singh did not reveal the militants' names,[2] the police shot him in the leg. *Id.* at 12. The police then took Singh to a doctor, who bandaged his leg wound. The police proceeded to beat Singh again, threatening him with death if he did not reveal the militants' names. The police told Singh: "[y]ou know the terrorists and you have

helped them, so let [us] know their names." Petitioner was held by the police for three days, until the head of his village gave the police a fifteen thousand rupee bribe. *Id.* at 12–13. Petitioner's testimony indicates that the police wanted the bribe not just for Singh's release but also as a means of extracting money from the terrorists. According to petitioner, "[t]hey said fifteen thousand is the cost they did, not only on me, but for the sake of the terrorists also, they were fighting." *Id.* at 14.

The Sikh militants repeatedly came to petitioner's house and continued to ask him for shelter and food. When he refused to help them out of fear for his young children, they beat him. *Id.* at 15. Petitioner did not tell the police about the militants because he feared that they would assume he was associated with terrorists. *Id.* at 16. The Sikh militants continued to visit petitioner's house. *Id.* at 17.

In August 1991, a group of armed men dressed as Sikh separatists visited petitioner's home. Because the men did not conduct themselves as the militants had on their previous visits, Singh believed that the men were actually policemen disguised as militants. *Id.* at 18. Soon after these events, the police arrested petitioner a second time. They accused petitioner of sheltering terrorists and demanded that he reveal their names. *Id.* at 21. The police took petitioner to the police station, where they beat and tortured him to such a degree that he could not walk. Petitioner was released when his mother paid a $25,000 bribe. *Id.* at 21–22. To recuperate from the beatings, petitioner stayed at home for fifteen or twenty days. *Id.* at 22.

Petitioner then went into hiding with relatives. He never stayed more than one

---

**1.** BIA Opinion, attached as Ex. 1 to Petition for Writ of Habeas Corpus, ("BIA Opinion") at 1. The BIA noted that the "immigration judge apparently found the applicant's story to be credible. For its part, the Immigration and Naturalization Service did not contest the applicant's veracity. Consequently, we will assume, *arguendo,* that the applicant's persecution claim is worthy of belief."

**2.** From the record, it is not clear whether or not Singh actually knew the names of the militants. However, Singh's actual knowledge is irrelevant for the purposes of his habeas petition. As discussed further below, Singh is claiming eligibility for asylum and withholding of deportation on the basis of imputed political opinion. Therefore, the relevant inquiry involves what the police thought Singh knew. The actions of the police indicate that they thought Singh knew the militants' names.

night in any single place. *Id.* at 22:20–21. He did not go to another state because he believed that Sikhs were persecuted in other states. *Id.* at 22–23. After petitioner went into hiding, the police came looking for him once again. *Id.* at 23.

Petitioner eventually secured false travel documents and left India on October 30, 1991. Singh arrived at San Francisco International Airport on November 4, 1991. He was immediately detained by Immigration and Naturalization Service ("INS") officers. Since that time petitioner has been in the custody of the INS. He is presently incarcerated in the Santa Rita Jail in Dublin, CA. On November 5, 1991, petitioner gave a sworn statement to an officer of the INS. Ex. 4 to Petition for Writ of Habeas Corpus. In his statement, Singh stated that if he went back to India, he thought the police would kill him.

On the basis of a February 7, 1992 hearing, an immigration judge ("IJ") denied petitioner's requests for asylum and withholding of deportation. The IJ found that petitioner had been persecuted on the basis of imputed political opinion, and that such persecution did not constitute a legal basis for granting asylum under *I.N.S. v. Elias–Zacarias,* ——— U.S. ———, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). IJ Opinion, attached as Ex. 2 to Petition for Writ of Habeas Corpus. On May 14, 1992, the BIA dismissed petitioner's appeal. However, the BIA rejected the IJ's interpretation of *Elias–Zacarias,* holding that the case did not rule out granting asylum on the basis of imputed political opinion. BIA Opinion, attached as Ex. 1 to Petition for Writ of Habeas Corpus.

Rather, the BIA found that Singh had not been persecuted within the meaning of the Act by the Indian police. According to the BIA, beatings and abuse during custodial interrogation or detention fall within the scope of Indian anti-terrorist laws. *Id.* at 5. The BIA reasoned that since the beatings and abuse occurred in order to extract information about the militants, they could not constitute persecution on the basis of political belief. The applicant's contact with Sikh militants gave the police "a legitimate right to investigate to determine whether he could provide information about these people." *Id.* at 7. The BIA also found that petitioner had not been persecuted on the basis of imputed political opinion by the Sikh militants. Finally, the BIA noted that "all of applicant's problems appear to be confined to the state of Punjab in India. He has not provided any evidence to establish a reason to fear persecution outside of that region." *Id.* at 8.

## LEGAL STANDARD

### A. *Standard of Review*

■ Factual and legal determinations in final administrative decisions denying refugee status are reviewed under different standards. Courts review factual administrative determinations to see if they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." 8 U.S.C. § 1105(a)(4). Legal determinations are reviewed *de novo* by the court. *Desir v. Ilchert,* 840 F.2d 723, 726 (9th Cir.1988).

■ The standard of review for mixed determinations of law and fact made by the BIA is more complex. There appear to be no Ninth Circuit cases directly on point. However, the Ninth Circuit has enunciated the general principles used to determine the standard of review for mixed questions of law and fact. *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). These principles apply to review of decisions made by administrative bodies. *Gregory K. v. Longview School Dist.,* 811 F.2d 1307, 1310 (9th Cir. 1987) (citing *McConney,* 728 F.2d at 1199–1204).

If application of a legal rule to the facts requires an inquiry that is essentially factual, the district court's determination should be considered factual. If, however, the application requires consideration of legal concepts and requires the exercise of judgment "about the values which animate legal principles," the question should be classified as legal. *McConney,* 728 F.2d at 1202. The *McConney* court noted that the application of law to fact will generally be a question of law. *Id.*

In *Lazo–Majano v. I.N.S.*, 813 F.2d 1432, 1434 (9th Cir.1987), the Ninth Circuit suggested that mixed questions of law and fact in deportation proceedings are ultimately questions of law. In that case, the BIA's rejection of the petitioner's claim had turned on a mixed question of law and fact: although the Board had believed the petitioner's story, it had found that the story did not meet applicable legal requirements. The Ninth Circuit noted that, given the Board's acceptance of petitioner's factual assertions, the only questions before it were legal questions, to be reviewed de novo. In addition, courts in other circuits have found de novo review appropriate for mixed questions of law and fact in deportation proceedings. *Tarvand v. I.N.S.*, 937 F.2d 973, 975 (4th Cir.1991).

### B. *Requirements for Asylum, Withholding of Deportation*

 In order to be eligible for asylum under Section 208(a) of the INA, an alien must show that he or she is a "refugee" within the meaning of section 101(a)(42)(A) of the INA, 8 U.S.C. § 1101(a)(42)(A). This requires the alien to show either persecution or a well-founded fear of persecution in a particular country on account of his or her race, religion, nationality, membership in a particular social group, or political opinion. The test for refugee status includes both a subjective and objective component. The subjective component is satisfied if the fear is "well-founded." *Bolanos–Hernandez v. I.N.S.*, 767 F.2d 1277, 1283 & n. 11 (9th Cir.1984). The objective component requires a showing, "by credible, direct, and specific evidence in the record," *Diaz–Escobar v. I.N.S.*, 782 F.2d 1488, 1492 (9th Cir.1986), that persecution is a "reasonable possibility." *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1217, 94 L.Ed.2d 434 (1987). If an alien is found to be a refugee, the Attorney General has discretion to grant asylum. *Id.* 107 S.Ct. at 1218.

 Under Section 243(h) of the INA, the Attorney General is authorized to withhold deportation of any alien to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period as he deems to be necessary. 8 U.S.C. § 243(h). Section 243(h) has been interpreted so as to entitle an alien to "mandatory withholding of deportation if his life or freedom would be threatened ... on account of race, religion, nationality, membership in a particular social group, or political opinion." *See Arteaga v. I.N.S.*, 836 F.2d 1227, 1228–29 (9th Cir.1988). The "clear probability of persecution" standard is applicable to withholding of deportation claims. *Id.* Under this standard, the proper inquiry is "whether it is more likely than not that the alien [will] be subject to persecution." *I.N.S. v. Stevic*, 467 U.S. 407, 424, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1984). The "well-founded fear of persecution" standard of proof for asylum is more lenient than the "more likely than not" standard for withholding of deportation. *I.N.S. v. Cardoza–Fonseca*, 107 S.Ct. at 1222.

## DISCUSSION

### I. *Petitioner's Asylum Request*

#### A. Past Persecution Due to Imputed Political Belief

 Petitioner contends that he was persecuted on the basis of political belief imputed to him by the police. Although the BIA accepted the facts of petitioner's claim, it rejected the legal conclusions petitioner drew from those facts. The court finds that the BIA's mixed determination of law and fact revolved around its faulty interpretation of the legal principles governing asylum claims. Accordingly, the court reviews the BIA determination de novo.

#### 1. *BIA Denial of Petitioner's Request*

 In denying petitioner's request, the BIA stated "we are not persuaded by the record evidence that the abuse suffered by the applicant at the hands of the police constituted persecution within the meaning of the [Immigration and Nationality] Act." BIA Decision at 5. The BIA argued that, since the police abuse occurred during an attempt to extract information about Sikh militants, such abuse fell within the scope

of anti-terrorist laws enacted by the national government to apprehend and punish terrorists in the troubled area of the Punjab.

The BIA position fundamentally misunderstands Ninth Circuit law on this question. This circuit has repeatedly distinguished legitimate police efforts to arrest and prosecute individuals suspected of criminal conduct from punishment imposed without any judicial process. *See Blanco-Lopez v. I.N.S.*, 858 F.2d 531, 534 (9th Cir.1988). The Ninth Circuit has also found that punishment, even of those actually guilty of criminal acts, amounts to persecution if it is excessive and arbitrary and is inflicted with a political motive. *Ramirez Rivas v. I.N.S.*, 899 F.2d 864, 868 (9th Cir.1990), *vacated on other grds*, —— U.S. ——, 112 S.Ct. 858, 116 L.Ed.2d 766 (1992). In petitioner's case, the only "crime" with which he could possibly have been charged was assisting the militants. However, petitioner was never charged with such a crime. Rather, he was threatened with death, shot, beaten, and tortured when he didn't deliver the names of the militants.[3]

■ The BIA also found that since the police abuse was motivated by a desire to extract information about the Sikh militants, it could not have been politically motivated. BIA Opinion at 7. This conclusion is based on faulty legal analysis. Although the police may have been motivated in part by a desire to extract information, this does not preclude a finding of persecution on account of imputed political opinion. In *Desir*, the fact that the Haitian government demanded money from the petitioner did not preclude a finding that the petitioner was persecuted on account of imputed political opinion. *Desir*, 840 F.2d at 724–25, 729. In addition, contrary to the BIA opinion, *Desir* was not overruled, or even questioned, by the recent Supreme Court opinion in *Elias–Zacarias*. In *Elias–Zacarias*, 112 S.Ct. at 816, the Court merely

noted that the asylum applicant had not alleged persecution on the basis of imputed political opinion. Indeed, *Elias–Zacarias* reaffirmed that direct proof of the persecutors' motives is not required for proving persecution within the meaning of the INA; only "some evidence," direct or circumstantial, is needed. *Id.* at 817.

BIA also concluded that Singh's case was distinguishable from Ninth Circuit cases on imputed political opinion in that the police did not appear to believe Singh was a Sikh terrorist. BIA Opinion at 8. However, Singh's claim of persecution is not premised on a police belief that he was a terrorist; rather, he claims that the police thought he was a *supporter* of Sikh terrorists.

■ Finally, BIA stated that even if Singh established past persecution within the meaning of the INA, he would still be "statutorily ineligible" for asylum. The BIA concluded that Singh had failed to show that persecution existed throughout India. Again, the BIA applied the wrong legal standard. If Singh establishes past persecution, he is statutorily eligible for asylum. *Desir*, 840 F.2d at 729–30. As discussed further below, the government then bears the burden of showing that petitioner does not have a well-founded fear of persecution *despite* the past persecution. *Matter of Chen* (Interim Decision # 3104), April 25, 1989. If the government is able to make this showing, the BIA may use its discretionary authority to grant or deny asylum.

In this case, the BIA denied asylum without any such showing by the government. Therefore, BIA's denial of asylum constituted an abuse of discretion. The denial was based on an incorrect understanding of the law governing statutory eligibility for asylum.

For the foregoing reasons, the court finds that BIA's rejection of petitioner's

---

**3.** In any event, the beatings, torture, and gunshots suffered by the petitioner *cannot* constitute lawful government action. *See, e.g., Forti v. Suarez–Mason*, 694 F.Supp. 707 (N.D.Cal.1988) (official torture is an actionable violation of international law); Universal Declaration of Human Rights, Article 5, General Assembly Resolution 217(A)(III) (December 10, 1948) ("no one shall be subject to torture").

claim was based on a faulty application of the relevant law. Consequently, the court must review the undisputed facts de novo to determine whether petitioner has offered evidence, direct or circumstantial, in support of his imputed political opinion claim.

### 2. Imputed Political Opinion

■ Petitioner asserts that the police believed that he had political beliefs similar to those of the Sikh militants and persecuted him on that basis. The court finds petitioner's claim well substantiated in both law and fact.

Claims for asylum on the basis of imputed political opinion are well accepted in this circuit. In *Estrada–Posadas v. I.N.S.*, 924 F.2d 916, 919 (9th Cir.1991), the Ninth Circuit recently affirmed that "certain conscious and deliberate acts or decisions by an alien may establish a well-founded fear of persecution on account of *imputed* political opinion ... when a persecutor attributes political beliefs to the alien as a result of these acts and decisions."

In this case, there is substantial evidence that the police believed that the petitioner was a supporter of the militants and that he was beaten, tortured, and shot on that basis. Although the militants had repeatedly threatened Singh, he did not report these threats to the police. Rather, the police only knew that the militants visited Singh's home. Indeed, when the police raided Singh's home, they caught him in the act of sheltering Sikh terrorists. In addition, despite the beatings and torture, petitioner *did not turn over the militants'* names.

The severity of the abuse inflicted on Singh also suggests that the police believed he was a terrorist supporter. The police shot Singh in the leg and beat him so severely that he couldn't walk for two weeks. The police also questioned Singh repeatedly about his knowledge of, and aid to, the terrorists.

A variety of cases in which the Ninth Circuit has found imputed political opinion involve facts similar to this case. In *Blanco–Lopez v. I.N.S.*, 858 F.2d 531, 534 (9th Cir.1988), the Ninth Circuit rejected the BIA holding that the Salvadoran Armed Forces were simply investigating a criminal case when they arrested, tied, blindfolded, threatened, and interrogated the petitioner for three days. ("We conclude that the incident described by Blanco–Lopez was not in furtherance of a criminal prosecution, but rather was one of governmental *persecution* based on Blanco–Lopez's perceived political beliefs.") (emphasis in original).

### 3. General Civil Unrest

The government's opposition to the habeas petition argues that petitioner's treatment was "random violence" resulting from "general unrest" and thus was not persecution with the meaning of the INA. However, the cases upon which the government relies differ markedly from this case. In *Limsico v. I.N.S.*, 951 F.2d 210, 212 (9th Cir.1991), the petitioner testified that he feared persecution in the Philippines based on his Chinese ancestry but failed to produce any evidence that he or his family had been harmed. In addition, his testimony about violence against Chinese Filipinos was "vague and speculative." *Id.* Similarly, in *Arriaga–Barrientos v. I.N.S.*, 937 F.2d 411, 413 (9th Cir.1991), the petitioner was not politically active and had not been threatened or persecuted. He merely contended that the unexplained abduction of two brothers who lived far from the region where he lived established the requisite well-founded fear. Finally, in *Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1581 (9th Cir.1986), there was no evidence that petitioner's assailants knew who he was. The accusations were "part of their general shakedown of an unknown man they discovered upon the streets at night." *Id.* In this case, the government police knew exactly who Singh was and specifically persecuted him on the basis of their belief that he was associated with militants.

### B. Threat of Future Persecution

The government's opposition to the habeas petition argues that petitioner has not shown a threat of future persecution sufficient for a finding of asylum eligibility.

The government argues that petitioner's problem is confined to the Punjab and that he would not face similar problems in other areas of India.

■ However, under the plain language of INA Section 208(a), a showing of past persecution is sufficient in and of itself for asylum eligibility. There is no need to show threat of future persecution. In *Desir*, the Ninth Circuit noted that if an alien establishes past persecution, he or she is eligible for asylum under section 208(a), and no showing that he or she would be persecuted is required. *Desir*, 840 F.2d at 729 (citing Supreme Court and Ninth Circuit cases).

The government points to several Ninth Circuit cases which have used the possibility of relocation to another part of the country to defeat claims of asylum eligibility. In *Quintanilla–Ticas v. I.N.S*, 783 F.2d 955, 957 (9th Cir.1986), the court rejected the asylum claim of a family of foreign nationals whose father was threatened by an anonymous note. The court noted that since the risk to petitioner appeared to be confined to his hometown, he could avoid danger by relocating within El Salvador. Similarly, in *Cuadras v. I.N.S.*, 910 F.2d 567, 571 n. 2 (9th Cir.1990), the court considered the petitioner's ability to avoid danger by escaping from his hometown as one factor in deciding whether the petitioner had a well-founded fear of persecution.

These cases are distinguishable from the instant case. In both *Quintanilla–Ticas* and *Cuadras*, there was no clear finding of past persecution. In *Quintanilla–Ticas*, the court emphasized that the single threat which had been directed at the petitioner was based simply on his wearing a military uniform. *Quintanilla–Ticas*, 783 F.2d at 957. In addition, since the petitioner had left the military and no longer wore his military uniform, even that threat had dissipated. In *Cuadras*, the court found that petitioner had *not* established a case for past persecution within the meaning of the INA. *Cuadras*, 910 F.2d at 571.

Moreover, neither *Quintanilla–Ticas* nor *Cuadras* involved threats from groups, governmental or non-governmental, which

operated nationwide. In *Beltran–Zavala v. I.N.S*, 912 F.2d 1027, 1030 (9th Cir.1990), the Ninth Circuit found that the petitioner had established a well-founded fear of persecution by an El Salvadoran death squad. The court rejected the INS argument that, under *Quintanilla–Ticas*, the petitioner could be deported to another part of El Salvador; the court noted that the threat in *Quintanilla–Ticas* came from a single individual. *Id.*

In this case, petitioner's past persecution was most likely directed by the national police, or at least by a police force controlled by the national government. As the December 1991 State Department report on India notes, paramilitary and police forces controlled by the national government's Union Ministry for Home Affairs are deployed in Punjab. *See* State Department Report, Ex. A to Respondent's Appendix of Exhibits in Support of Opposition to Petition for Habeas Corpus ("Report") at 1425. The national police force would presumably be capable of locating petitioner in other regions of India.

However, India is a much larger, more diverse country than the countries involved in the Ninth Circuit cases discussed above. On the other hand, petitioner's ability to avoid further persecution by relocating inconspicuously may be limited by his manner of religious dress and his inability to speak the languages or dialects of other regions of India. In *Damaize–Job v. Immigration and Naturalization Service*, 787 F.2d 1332 (9th Cir.1986), the Ninth Circuit held that the fact that Nicaragua's persecution of the petitioner's Miskito Indian tribe was concentrated in an area far from where the petitioner lived did not defeat his asylum claim. One factor upon which the court relied was that the petitioner could be readily identified as a Miskito wherever he went. *Id.* at 1336–37.

The court therefore concludes that the petitioner has established his eligibility for asylum. The BIA erred as a matter of law in finding the petitioner ineligible.

### C. Exercise of Discretion

■ Once asylum eligibility on the basis of past persecution has been established,

evidence that little likelihood of present persecution exists becomes relevant to the exercise of administrative discretion. Such evidence can be used to defeat the presumption of an exercise of administrative discretion in favor of asylum. *Matter of Chen* (Interim Decision # 3104), April 25, 1989. ("Where past persecution is established by the applicant, the Service ordinarily will have to present, as a factor militating against the favorable exercise of discretion, that there is little likelihood of present persecution.")

In *Matter of Chen,* the BIA justified this shifting of the burden by noting that the plain language of the statute as well as various Ninth Circuit cases established past persecution as sufficient grounds for asylum eligibility.[4] Similarly, the INS itself has recognized that if an applicant establishes "past persecution, he shall be presumed also to have a well-founded fear of persecution unless a preponderance of the evidence establishes that since the time the persecution occurred conditions in the applicant's country ... have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted were he to return." 8 C.F.R. § 208.-13(b)(1)(i). The INS has not offered any evidence that petitioner would not be persecuted in other regions of India. The general State Department comment that "Sikhs are leading tranquil and productive lives in other regions of India," Report at 1426, does not address *petitioner's* ability to live peaceably in another region of India. As discussed above, petitioner endured several distinct incidents of severe beatings and torture. Petitioner was persecuted on the basis of imputed *political* views, not simply because he is a Sikh.

■■■■ Under the applicable law, evidence regarding whether petitioner will be safe elsewhere in India is necessary for proper exercise of the BIA's administrative discretion over petitioner's asylum claim. The court therefore remands petitioner's case

to the BIA with instructions to hear additional evidence regarding whether petitioner will be safe in other regions of India. *See Najaf–Ali v. Meese,* 653 F.Supp. 833, 839 (N.D.Cal.1987); *Sarkis v. Nelson,* 585 F.Supp. 235 (E.D.N.Y.1984). As discussed below, this evidence is also relevant to a determination of whether the petitioner is entitled to withholding of deportation.

## II. *Petitioner's Withholding of Deportation Request*

Since petitioner has established past persecution, he is entitled to withholding of deportation if he can prove that he faces clear probability of persecution elsewhere in India. *See Desir,* 840 F.2d at 730. Conversely, the government can defeat a claim for withholding of deportation if it can show than it is more likely than not that petitioner would be safe in other regions of India. *See* 8 C.F.R. § 208.16(b)(2). The court remands the case to the BIA for further proceedings on this question. *Desir,* 840 F.2d at 730.

## CONCLUSION

For the reasons given above, the court finds that petitioner is statutorily eligible for asylum. It remands the proceedings back to the BIA for the taking of additional testimony on the question of whether petitioner will be safe from political persecution in other regions of India. Evidence that petitioner will be safe in other regions is necessary to defeat the presumption of a favorable exercise of discretion on petitioner's asylum claim. If petitioner proves clear probability of persecution in other regions of India, he is entitled to withholding of deportation.

The record of such proceedings should be filed with this court within 120 days of the date of filing of this order. If the parties cannot file this record within 120 days, they must provide this court with reasons for extending the 120-day period. Unless the record is filed within 120 days or rea-

---

**4.** The *Chen* court also noted that some cases of past persecution may be so atrocious that the favorable exercise of administrative discretion may be warranted for humanitarian reasons, even if there is little likelihood of future perse-

cution. The BIA found that Chen's persecution, which had started at the age of 8 and continued until the age of 22, represented such a case. This court does not find that level of atrocity in Singh's persecution.

sons for extending this period are given, the petition for a writ of habeas corpus will be granted by a further order of this court. Execution of deportation proceedings is stayed pending completion of the administrative proceedings on remand and any further consideration by the court.

IT IS SO ORDERED.