9 F.3d 1550
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ion CAPUSAN; Ana Capusan, Petitioners-Appellants,
v.
Richard C. SMITH, District Director, U.S. Immigration and
Naturalization Service, Respondent-Appellee.
 No. 92-35379.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1993.*
Decided Nov. 9, 1993.
 
 Before: TANG, FARRIS, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ion and Ana Capusan, natives and citizens of Romania, appeal the district court's denial of their petition for habeas corpus challenging the decision of the Board of Immigration Appeals. With one member dissenting, the Board upheld the order of the Immigration Judge ("IJ"), finding the Capusans excludable and ineligible for asylum or withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a), 1253(h). The issue before us is whether the Board erred in finding that the Capusans failed to establish a "well-founded fear of persecution" on account of their religious beliefs as Pentecostal Christians. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * A. Standard of Review
 
 
 4
 The district court's decision to grant or deny a habeas petition is reviewed de novo. Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc), cert. denied, 113 S.Ct. 1818 (1993). We review questions of law, such as whether the Board applied the correct legal standard, de novo. Rodriguez-Rivera v. INS, 848 F.2d 998, 1001 (9th Cir.1988) (per curiam). The factual findings underlying the Board's decision, including the determination that an alien has failed to prove his eligibility for asylum, are reviewed under the "substantial evidence" standard. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). Reversal is warranted only where the evidence presented compels the conclusion that the applicant had the requisite "well-founded fear of persecution." INS v. Elias-Zacarias, 112 S.Ct. 812, 815 n. 1 (1992).
 
 B. Discussion
 
 5
 To be eligible for a discretionary grant of asylum, an alien must show persecution or a "well-founded fear of persecution" on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. §§ 1158(a), 1101(a)(42)(A). A "well-founded fear" contains both a subjective component, requiring that the fear be genuine, and an objective component, which "requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." Diaz-Escobar v. INS, 782 F.2d 1488, 1492 (9th Cir.1986). The alien bears the burden of proving he is eligible for asylum. Rebollo-Jovel v. INS, 794 F.2d 441, 448 (9th Cir.1986).
 
 
 6
 After carefully reviewing all of the evidence in the record, the Board found that the Capusans had failed to meet the objective component of the test. In reaching this conclusion, the Board recognized that the "well-founded fear" standard for asylum under section 208(a) of the INA is less stringent than the "clear probability" requirement for withholding of deportation under section 243(h)(1). INS v. Cardoza-Fonseca, 480 U.S. 421, 430-31 (1987). Because the Board applied the proper legal standard, we will reverse only if the evidence presented compels the conclusion that the Capusans had a well-founded fear of persecution. Acewicz, 984 F.2d at 1061.[1]
 
 
 7
 The evidence in this case does not compel reversal. As the Board recognized, eligibility for asylum can be based on past discrimination alone. Id. at 1062; Matter of Chen, Int.Dec. 3104 at 4 (BIA 1989). The Board found, however, that the discrimination suffered by the Capusans while in Romania did not amount to religious persecution. It noted that throughout the period of alleged persecution, the Capusans were able to continue practicing their faith by attending church and prayer meetings. They were also able to obtain valid passports and exit visas to travel to the United States. In two decades the Capusans were detained briefly on two separate occasions. Although they were subject to more surveillance than the average Romanian citizen, the incidents they allege are not sufficiently severe to justify relief under Chen.
 
 
 8
 Nor does it appear that the government imposed substantial economic disadvantage on the Capusans because of their religion. Their farm was confiscated in 1952 at a time when many people had their land taken away because of collectivization. While Mr. Capusan was fired from his job in 1956, he then worked for the government as a drafter and engineer until 1983, when he voluntarily retired. He and his wife owned their own home. He testified that his job was an average one, and that the main hardship they faced was supporting their seven children on his salary.
 
 
 9
 The Board noted in its decision that the Department of State Bureau of Human Rights and Humanitarian Affairs had issued an advisory opinion that the Capusans did have a well-founded fear of religious persecution. We recognize that such opinions are relatively rare. However, the basis for the Bureau's opinion was the Capusans' application form, and the allegations contained therein were undermined by their testimony at the hearing before the IJ. Although the IJ found them to be credible witnesses, their testimony indicated that the Capusans were not singled out for religious persecution.
 
 
 10
 The Board agreed with the IJ that the Capusans failed to establish that they were persecuted in the past, or that upon return to Romania they would live other than they did before. It therefore concluded that they failed to show a reasonable fear of persecution. We believe that substantial evidence supports the Board's decision that the Capusans were not eligible for asylum. The district court properly denied their habeas petition.
 
 II
 
 11
 The Capusans allege additional facts in support of asylum for the first time in this appeal. According to their briefs, Mr. Capusan has suffered three heart attacks since the Board denied them asylum. They also allege that two of their sons have since been granted refugee status in the United States. The latter allegation, if true, could support a finding that the Capusans did suffer religious persecution, but there is no evidence in the record to support it. Absent an overriding justification, an alien must exhaust his administrative remedies before seeking review of a deportation order. Vargas v. INS, 831 F.2d 906, 907 (9th Cir.1987). Failure to raise an issue in an appeal to the Board constitutes a failure to exhaust remedies as to that question and deprives this court of jurisdiction to hear the matter. Id. at 907-08. Hence we cannot consider these bare allegations on appeal.
 
 
 12
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Relying on Singh v. Ilchert, 801 F.Supp. 313, 317-18 (N.D.Cal.1992), the Capusans argue that de novo review is warranted because this case involves the application of a legal standard to an undisputed set of facts. Singh, however, involved the issue of whether the abuse suffered by the alien was politically motivated, not whether the harm he suffered was sufficiently severe to amount to persecution. Id. at 318-19. Singh was also decided before Acewicz, which clearly indicates that the issue before us is a factual determination that must meet the standard set forth in Elias-Zacarias